The plaintiff on 19 September, 1820, bought certain slaves of one Alley for value and bona fide, and took them into possession; and afterwards, on 7 October, 1820, the defendant (who was coroner of the county) levied on the slaves by virtue of an execution issuing from September Term, 1820, returnable March, 1821, at the instance of the State Bank against Alley, took the slaves into his possession and sold them.
The State Bank obtained its judgment at March Term, 1820, for $2,130; afi. fa. issued thereon to the defendant (Alley being then sheriff), returnable September Term, 1820, and tested of March; the execution was returned by the coroner at September Term without any indorsement thereon, when the clerk altered the teste and issued the same writ as an alias from September, 1820, to March Term, 1821, and it was under this last writ that the defendant levied and sold. *Page 159 
The plaintiff on the trial introduced Alley to show that a levy had been made on the first writ of fi. fa. to the value of the debt; Alley swore that the defendant in June, 1820, called on him and asked him for a list of property which he might sell to satisfy the execution, and Alley gave him a list of sundry negroes equal in value to the amount of (294) the debt, but these negroes were never taken into possession by defendant, and in September Alley carried them to Tennessee and sold them.
There was no other act done by the defendant as a levy except taking the list as above stated.
The presiding judge instructed the jury that there was nothing in the transaction between the defendant and Alley which amounted to a levy to discharge Alley; that the negroes which plaintiff had purchased were subject to the execution under which they were sold by defendant in October, notwithstanding the sale to the plaintiff was fair and for full value; that the defendant was justified in selling them by his execution, and was entitled to a verdict.
There was a verdict and judgment for defendant, and the case stood before this Court on a rule to show cause why there should not be a new trial.
It will admit of no doubt that the execution which issued against Alley bound all his property from its teste, which was in March, 1820; and notwithstanding a bona fide sale of any part of it after that period to the plaintiff, it was still liable to be taken in execution. But the plaintiff alleges that a levy having been made of the negroes and property belonging to Alley of sufficient value to pay the balance of the debt, the two negroes now sued for were discharged from the lien and became a fair subject of private sale. The inference would be correctly drawn if a levy on sufficient property had in fact been made; but it plainly was not made. It does not appear that the coroner ever saw the property, or might have seen it if he had desired. The delivery of a list merely, without some act on the part of the coroner amounting to an actual seizure, or sufficient at least to vest a special property in him, so as to maintain trover against one who converted them before a sale cannot be deemed sufficient. Had the property (295) been present when the list was delivered, and the coroner had signified that he held it bound to answer the excution, and there was no opposition to his possessing himself of it had he so desired, it would have amounted to a levy; for it has never been understood that actual touching the property was necessary, or that it must be removed out of the possession of defendant. *Page 160 
The law allows the sheriff to take a bond for its forthcoming, and if he think proper to incur the risk of leaving the property with the debtor without a bond he is at liberty to do so. The coroner himself by not returning this levy seems not to have considered it as one; and upon the whole there is no reason to disturb the verdict.