Ruffin, Chief Justice.
 

 The bill does not impeach the assignment as being fraudulent within the act of 1715, for want of a consideration, on account of the debts mentioned in . it not being due. On the contrary, it assumes all of them to be just; and submits to payment of those upon judgments in this state, because they have a legal preference by reason of the prior lien of the attachments. In the ground of that submission, we think the pleader who drew the bill was mistaken ; because in our opinion, this interest of H. S. Williams was not subject to attachment. But for the same reason on which that preference is yielded, the bill insists that the plaintiff acquired a Hen by his execution, which arrested the power of the debtor to assign this fund. Upon the correctness of this position, the rights of these parties depend.
 

 There is no doubt that this court considering an equitable right as a part of the property of a debtor, will make it effectual to the satisfaction of a creditor who has established his debt by judgment, and is unable to obtain satisfaction by execution at law; but this is not on the ground of any'lien created by the execution on the equitable property of the debtor. On the contrary, it is upon the ground that there is no such lien; and that in consequence thereof, unless equity will decree a satisfaction, the creditor can have no other remedy. Since there is no lien, the debtor may assign .for value, unless the object of the assignment be in reality and primarily to defeat the creditor, as if the purchaser have notice of the judgment debt, knows of the insolvency of the debtor, and that his object is to put the money in his pocket, and defy the creditor.
 
 Edgill
 
 v.
 
 Haywood,
 
 3 Atk. 356. But that is an intent that cannot be implied; nay is repelled, when the assignment is to satisfy or secure another
 
 bona fide
 
 debt; because, until a specific lien be in some way created, a debtor has
 
 *404
 
 a right to prefer which creditor he pleases. This is so even at law; and much more in equity, which regards all debts as alike in conscience. If therefore, from the nature of the property, the process of execution does not create a lien at law, the creditor must file his bill against the debtor and his trustee, to change the particular equitable property in this court, which constitutes a
 
 lis pendens,
 
 as to the thing, and consequently restrains the debtor’s alienation, or rather keeps the property still liable in the hands of the assignee.
 
 Edgill
 
 v.
 
 Haywood. Hendricks
 
 v.
 
 Robinson, 2
 
 John. C. C. 306. Until bill filed, any honest disposition by the debtor of his equitable property, is sustained; and that for the payment of a just debt, is apparently honest.
 

 It is, however, otherwise, when the property is subject to be sold under the execution at law; for the jurisdiction here, then becomes ancillary to the law. The legal lien is not lost by the creditor being under the necessity of coming into this court, to clear the title of doubts, or ascertain the precise extent and value of the debtor’s interest ; equity neither sets up, rior destroys such a lien.
 

 As the assignment, in question here, was made before the bill filed, and is not impeached for fraud, it must prevail, unless the plaintiff could have sold the negroes in question, under his execution. The case may be confined to the view arising on that state of facts. Although it might be a material question, whether the plaintiff did not lose the lien, as against these parties, by what afterwards happened; that is to say, by his not selling and suffering the negroes to be turned into money, under the decree of the court of equity. But supposing his rights against this fund to be the same as against the negroes themselves, he cannot be preferred to the assignee, unless at law the negroes were subject to sale by the sheriff.
 

 It is insisted that they were; first, because the legal title vested in H. S. Williams, and his brethern, as tenants in common, of their share, upon the division made in February, 1831, under the order of November, 1830; but the contrary is quite clear. No conveyance by the trustee, was made or directed; and when that general division was
 
 *405
 
 confirmed, the share allotted to this particular family, was undivided between them, and was directed to be still held by the trustee, expressly upon the old trusts, for them.
 

 A trust-estate is not liable to execution at law, unless it be a pure and simple, one, in which nothing is to be done by the trustee.
 

 It is further insisted; secondly, upon the ground, that after that decision, the trust-estate was within the act of 1812, and subject to be sold under execution against H. S. Williams, one of the
 
 cestui que trusts.
 
 It is to be remarked here, that all the rights of the plaintiff, depend in this suit, upon the soundness of this rule, as applied to the property in the state it was during the operation of hispen
 
 facias,
 
 sued out from December, 1830, and returnable to March court, 1831. All the executions since issued, are writs of
 
 venditioni exponas,
 
 upon the levy of that
 
 fieri facias ;
 
 and therefore the whole rests upon the effect that had at the time. We think it clear, that the property was not then in a condition to be seized and sold at law. It was then subject to all the complicated trusts that ever existed under the deed of Pherebee Williams. Even the general division was not then reported, much less confirmed. The whole was liable then to be set aside, and the negroes allotted to this family, given to others of the
 
 cestui que trusts.
 
 Indeed, that division seems to have been made more for the convenience of the parties, and to relieve the trustee, as to the possession of some of the slaves, than to conclude the rights, or for any other purpose; for to all the parties, it was without prejudice; and the respective claimants had still to show, among themselves in families, what advancement from their several fathers, they had received; and the shares of all were subject to the demands of the trustee, for his services and disbursements on the trust property, according to the terms of the deed. But this was more particularly the case with respect to the allotment of slaves, in which H. S. Williams was concerned ; for they were to be held by the trustee himself as such, subject to the original order of the court, as to their distribution — none whatever having been then or previously made touching that share.
 

 Those slaves were then plainly not held upon that simple, pure and clear trust, by which it was the duty of the trustee to admit the
 
 cestui que trust
 
 into the immediate
 
 *406
 
 enjoyment and possession of the property, and convey the legal estate upon his demand, which according to the rule of Brown
 
 v. Graves,
 
 4 Hawks, 342, and
 
 Harrison
 
 v.
 
 Battl
 
 e Dev. Equity, 537, approved in
 
 Gillis
 
 v.
 
 M‘Kay,
 
 4 Dev. 172, is necessary to bring the case within the act of 1812. This last case, indeed, arose upon the very deed now before us; and it obliges us to treat all interest of the
 
 cestui que trust
 
 under the deed, as merely equitable rights, * ' .. . , until the property came to those persons, divested alto-ffether of the trust; or, at least, until those trusts be altered and reduced, by a decree of the court, or the acts oí the parties, to a state of purity and simplicity, in which the trustee holds only for one
 
 cestui que trust,
 
 or for one set of
 
 cestui que trusts,
 
 all claiming an equal and ascertained interest.
 

 The cases of Brown
 
 v.
 
 Graves,
 
 313;
 
 Bar-rismv. Bailie,
 
 1 Dev. Eq. 5 v.
 
 M'Kaj,
 
 í7Jg^]^ep' proved.
 

 Whether lfonetenSt ant in common of a trust estate, can he sold deí cxecu-lion,
 
 Qu.?
 

 The case, therefore, is against the plaintiff, upon its particular circumstances at the time he sued the execution, by which he supposes himself to have acquired a lien.
 

 This cause, it is thus seen, may be decided without discuss’n§ t^ie more general question, whether, upon a trust for two or more, as immediate, equitable, joint-tenant, or tenants in common, the interest of one of them can be sold under execution against him alone. The court, therefore, deems it proper to leave that important point still open,
 

 It appears by the pleadings and exhibits, that the debts secured by the assignment, amount to nineteen hundred and nine dollars, exclusive of that to Sonter, of which the particular amount does not appear. The sum to which M‘Neill is entitled, as the share of H. S. Williams of the proceeds of the sale of the slaves, is only fifteen hundred and sixty-nine dollars and fifty cents; a balance, therefore, will be still due on those debts. If this were the whole case, the bill ought at once to be dismissed; but the deed of H. S. Williams, which is exhibited, also conveys two tracts of lands upon the same trusts, with directions to sell them; and M'Neill has also received, or is entitled to receive, further sums, as his assignor’s share of the hires of the negroes. It does not appear what sums will come to the trustee from those sources; and it may be, that after satisfying the debts mentioned in the deed,
 
 *407
 
 there will be a surplus applicable to the plaintiff’s demand in this court. Liberty is therefore given to the plaintiff, to have an account stated, of those debts, upon the foot of the assignment, and also of the trust-fund in the hands of the trustee, in order to ascertain whether there will be anything over and above those debts,, as described in the deed. But if such a reference be not asked, at or before the calling of the cause at the next term; the bill will then stand dismissed, with costs. In the meantime, the injunction heretofore granted, must be dissolved, so far as respects the sum of fifteen hundred and sixty-nine dollars and fifty cents, beforementioned.
 

 PeR Cukiam. Decree accordingly.