Ruffin, C. J.
 

 Supposing the lien created by the levy of the
 
 fieri facias,
 
 to have been once lost, the court would be reluctant to-hold, that it was revived by the order made in December,-1839, and1 the proceedings under it, to the prejudice of a title acquired by the defendant at a time when the lien was extinct or dormant. It must be admitted that it seems to be clearly settled in England, that the statute, West.
 
 2,
 
 c. 45, only requires a
 
 scire facias
 
 to revive a judgment
 
 *259
 
 when no execution is sued within a year and day ; and that, if an execution be sued within that period, and be and filed, another execution may be sued at any distance of time without a
 
 scire facias,
 
 by entering continuances from the first to the last writ. Indeed, it was held, with respect to the process of execution against land, that the creditor may, after a year and a day, enter an award of an
 
 elegit
 
 on the roll, as of the term of the judgment, and then continue the same down by
 
 vicecomes non misit breve,
 
 and sue out his
 
 elegit
 
 at any time without a
 
 scire facias. Cook
 
 v
 
 Bathurst,
 
 2 Show. 235. Carth. 283. Probably the practice of allowing the entry of continuances began with the
 
 elegit,
 
 given by stat. West. 2, c. 18, inasmuch as it could do no prejudice to third persons, under any circumstances. For, by the construction of the statute, the judgment bound the lands the debtor had on the day of the judgment rendered, or at any time afterwards; and this lien continued until satisfaction against the debtor, his alienees and junior judgment creditors. If the judgment became dormant, and was revived by
 
 scire facias,
 
 this latter judgment was only
 
 quod exe-cutionem habeat,
 
 by the express words of the statute; so that the
 
 elegit,
 
 then issued, ran in the same terms it would if the judgment had not become dormant, and commanded the sheriff to deliver to the plaintiff one half of all the land the defendant had on the day of the original judgment or at any time afterwards. It consequently rode over any intermediate alienation. Hard as the case may be, it follows inevitably, from the principle declared by the statute, that the judgment binds the land ; and it charges every person with notice of the judgment. The allowing the continuances to be entered on the roll had the effect of making the record appear regular, and, it would seem, that it had no other object. No doubt, upon reasonable ground shewn, as that the debt had been satisfied or released, the court would not allow the continuances to stand, but would put the plaintiff to his
 
 scire facias,
 
 so as to let in the defendant to plead. Except in a case of that kind the
 
 scire facias
 
 answered no useful purpose; since as against the land the execution ran precisely as it would, if an
 
 elegit
 
 had been in the sheriff’s hands
 
 *260
 
 <^lu'n§' ^ie tbue from the judgment rendered. And such is the law of England to this day ; for the stat. 29, Car. 2, c. 3, s. 16, extends only to writs of execution against the goods of the party, as to which they bind only from the delivery to the sheriff. It was easy, however, after this last statute, to transfer to executions against goods the rule, under which continuances of an
 
 elegit
 
 had been permitted ; for this fiction also could do no harm, since the writ of
 
 fieri facias
 
 had no relation, but bound only while it was in the sheriff’s hands ; that is to say, provided it was not levied. Hence, if there was no suggestion of satisfaction, the
 
 scire facias
 
 in this case also was required by no purpose of justice, and the plaintiff was allowed to make his
 
 fieri
 
 facias, sued out after a long interval, orderly and regular on the record by continuances on the roll after one had been issued and returned. For it affected only the parties to the record, was a convenience to the plaintiff, did no injustice to the defendant, and saved expense to both.
 

 Far different may be the consequences of such a course in our law. Here the common law is still in force, by which
 
 the fieri facias
 
 binds from its
 
 teste;
 
 and the unity of an original
 
 fieri facias
 
 and an
 
 alias
 
 and
 
 yluries
 
 regularly issued is, for the purposes
 
 of the
 
 lien created by the first, too firmly established to be shaken.
 
 Gilly
 
 v Dickerson, 2 Hawks 341.
 
 Brasfield
 
 v
 
 Whitaker,
 
 4 Hawks 309. To permit a plaintiff, after a return of a
 
 nulla bona
 
 on
 
 a fieri
 
 facias, to intermit his
 
 alias
 
 for a term, and then sue it out and connect it with the former by entering an intermediate one on the roll, so as to set up a lien against purchasers and creditors, which would not otherwise exist, but had been lost by the laches of the plaintiff, would be grievously unjust. It cannot be a matter of corase here, as ir. England, for the plaintiff to file his first writ, continue it on the rolls, and at a remote period take out another as a pluries ; because in England he thereby defeats no creditor or purchaser from the defendant, while here, by the relation, he may do both. There has been no such practice here, and it would be mischievous to introduce it. If such a thing can be done here,
 
 *261
 
 it can, at all events, be done only by special leave of the court. Here there was an order allowing writs to be put file, so as to connect that finally acted on with that on which execution was begun. But the Superior Court held, notwithstanding, that a right had in the meanwhile become vested in the defendant, which could not be thus divested. Upon the correctness of that position the argument at the bar turned.
 

 It was said for the defendant, that it was against first principles that third persons should be affected by fictions in proceedings, to which they are not parties, and that no court has power to make an order thus to operate ; and, in the next place, that, in re-enacting the stat. 18, Ed. 1, c. 45, an important alteration has been introduced by the Legislature, Rev. St. c. 31, s. 114, by using the negative words “ no execution shall issue after a year and a day from the rendition of such judgmentwith a proviso, that when an execution hath been issued within a year and a day, another may be issued within a year and a day from the issuing of the last execution — whencé it was deduced, that it would ■directly contradict the statute to dispense with
 
 a. scire facias
 
 in any case, where more than a year and a day had elapsed since the last execution. Upon the last point we refrain from expressing an opinion, as it does not arise in the case ; for the act of 1S36 went into operation the 1st day of January, 183S, and the writ, under which the plaintiff claims, was issued in December, 1837. Upon the former question, it was, on the other hand, insisted for the plaintiff, that this was but the exercise of the power of amendment, and that, ¡especially under the liberal enactments in our statutes, it is possessed by all courts, inferior as well as superior in their discretion, and not subject to revision: and that, in truth, the order ought not to be set forth in the record ; but that the record itself is amended, so as to read as if the matter, embraced in the order of amendment, had been originally Inserted in it; and that, hence, it cannot be judicially seen that the new matter is new, but it must be deemed that the executions were in fact issued, as upon the face of the record they now appear to have been.
 

 
 *262
 
 The court has no hesitation in stating, that after giving to the question much attention, we should feel much embarrassed in coming to a decision, were this the case of a
 
 fieri facias
 
 not levied, and of
 
 alias
 
 and
 
 pluries
 
 writs of
 
 fieri fa-cias
 
 founded on the first. We do not decide it, because we think the case before us essentially different from that, supposed, inasmuch as here there was a levy followed by writs of
 
 venditioni
 
 exponas; though that difference does not seem to have been adverted to on the trial. We can, however, say this much explicitly; that upon the general principle that no person should be affected by
 
 res inter alios ac-
 
 ta, on which he could not be heard, we should incline strongly to the opinion of his Honor, unless we should find ourselves compelled by imperative rules of law to hold the contrary. It may be that one court cannot, for any purpose, look into the record of another court as it now reads, so as to see how it was made to .read thus; and, if so, we should of course yield to the rule of law. If such should be the law — as it possibly is — it furnishes a cogent reason why courts should be extremely canti'ous in allowing amendments, or, rather, statements of facts and proceedings, absolutely fictitious, to be inserted in the record, when the interests of persons not before the court may be injuriously affected, The propriety of perfecting process actually issued, as by putting a seal to a writ, or making an execution conform to the judgment in the amount of the debt and costs, and the like, is not denied, but has been declared by this court.
 
 Purcell v McFarland,
 
 1 Ired. 34.
 
 Clark v Hellen.
 
 Ibid 421. But an amendment of a
 
 fieri facias,
 
 by inserting words to alter it from an original to an
 
 alias,
 
 was refused, when it would prejudice the right of a third party.
 
 Bank of Cape Fear v Williamson,
 
 2 Ired. Rep. 147. Yet, it the power be admitted, we think we may safely advise magistrates, who sit in inferior courts, never, under the pre-tence of amendment, to allow a mere fiction, a false statement, to be inserted in the record. It is very proper to make amendments according to the truth;-but the purposes of justice can hardly be promoted by making the record speak
 
 *263
 
 untruly, especially when the object is thereby to affect a stranger to it.
 

 The occasion, as it has seemed to us, has called for the foregoing observations, although, as the court thinks, in this case no prejudice was done to the defendant in the judgment, or to the present defendant by the order and continuances ; because we hold that the lien created by the levy of the
 
 fieri facias
 
 was not lost. For this, opinion, it is now proper to state the grounds.
 

 The case has heretofore been considered, as if the first
 
 fieri facis
 
 had not been levied, and the subsequent executions had been
 
 alias
 
 and
 
 pluries
 
 writs of the same kind ; in which case we have stated we should not be inclined to adopt what appears to be the practice in England. But we think a writ of
 
 fieri facias
 
 levied on land and returned, and writs of
 
 venditioni exponas
 
 founded thereon, make a case essentially differing from the former: and that the levy creates a specific lien, which binds the lands, as against the defendant and those claiming under him, to many purposes, as it would be bound by the judgment under the stat. 13, Ed. 1, c. 18. This seems to result from the necessary effect of a levy, and the nature of a writ of
 
 venditioni exponas.
 

 If goods be taken under a
 
 fieri
 
 /acias, they vest in the sheriff, and he may sell them after he has returned the writ, and, indeed, at any distance of time. If he does not sell, the plaintiff can compel him by a
 
 venditioni exponas
 
 / and this he also can necessarily do at any distance of time; for the execution was begun by the levy, and the' goods are alt-the time in
 
 custodia legis,
 
 and the execution i-n progress.^. The plaintiff may have his remedy against the sheriff for' not selling. But there cau be no doubt, that he can also compel him to sell by a
 
 venditioni exponas
 
 alrd
 
 distringas;
 
 and as long as the sheriff can have the power to sell, the plaintiff can have the power to enforce him; To the purpose of compelling the officer to sell, if cannot' be requisite to revive the judgment by
 
 scire facias
 
 against the defendant. We hold, that, in like manner, when land is levied' orty a
 
 venditioni exponas
 
 for the sale of it may be taken Oúf, a4-
 
 *264
 
 'though á term intervene after the return of the
 
 levy.
 
 It is true that land does not, like goods, vest in the sheriff; and for that reason that officer cannot sell land without a
 
 vendi-tioni exponas. Barden v McKinnie,
 
 4 Hawks, 279.
 
 Seawell
 
 v
 
 Bank of Cape Fear,
 
 3 Dev.
 
 279.
 
 Yet if the levy have not the effect of appropriating the land to the satisfaction of the debt, it is difficult to conceive what effect it has at all. We cannot attribute to it a less operation. It is a declaration of record by the sheriff that the particular land is' attached ; and it would seem, that it should devote that land by sale to the debt, as much as an award of an
 
 clcgit
 
 binds all the land of the debtor under the stat. of West, 2, and for similar reasons. Now, when that writ is sued out, no matter when, it takes, by its words, all the land the defendant had at the date of the judgment. So the writ of
 
 vendiiioni ex-ponas
 
 relates to the levy, and commands the sheriff, in terms, to sell the land therein described, as having been made subject thereto by the previous levy. Is it an answer to the writ, that it did not emanate from the term to which the levy was returned ? Can the sheriff return to if, that the lauds do not now belong to the defendant, but to another person, to whom the defendant sold them'? Certainly not. Whenever the levy may have been made, it is the sheriff’s duty to sell the land according to the exigence of the writ. It is no injury, either, to the ■ defendant to make the sale under the writ of
 
 venditioni exponas.
 
 Ought he to object, that the writ should have issued three or six months sooner? It is true, if the levy is discharged by an act of the plaintiff, the lien is gone, and there is nothing on which to found the
 
 vendiiioni exponas.
 
 Thus the issuing a second
 
 fieri facias
 
 discharges a previous levy.
 
 Scott
 
 v
 
 Hill, 2
 
 Murph. 143.—
 
 Amyatt
 
 v
 
 Backhouse,
 
 3 Murph. 63. But it is a different question, whether, as against the defendant, the levy is vacated or abandoned by the ovnission merely to sue out a
 
 ven-ditioni exponas
 
 from the first term and keep it up until a sale. Why should it be? What good purpose is answered by it? As to chattels, it is admitted the writ of
 
 venditioni
 
 maybe sued at any time. And there seems no good reason why it should be otherwise in regard to land. We know in
 
 *265
 
 practice, that orders of sale in thousands of instances have been issued to sell land levied on under a justice’s judgment, although no execution issued from the first term, or one or
 
 °
 
 . more terms, had been subsequently pretermifted. Theomtssion is not like the positive act of issuing a general execution ; for that must be deemed a disclaimer of the lien on the particular land. We know of no decision, that the levy becomes inoperative, unless followed up by process in hot pursuit. Indeed, the question is very much without direct authority, except in our own practice in this State, and by analogy to the effect of a levy on goods. In England, and in some of our sister States, the
 
 fieri facias
 
 does not run against land, and, consequently, there is no
 
 venditioni expo-nas
 
 to sell it. In others of the States the statute of George 2d is construed not to prevent the judgment itself from binding the land, as it did under the stat. West. 2, although the execution be by
 
 fieri facias
 
 instead of an
 
 elegit,
 
 and, of course, the elder judgment is entitled to the first satisfaction in all cases. With us, however, the judgment does not itself bind; but a levy of the
 
 fieri facias
 
 does, so as to authorize the writ of
 
 venditioni exponas
 
 to sell the land levied on, as a thing
 
 in custodia legis
 
 for the purpose of satisfying that debt. In analogy to the case of goods, the levy on land must have the effect of placing the land in the custody of the law. In
 
 Tarkinton
 
 v Alexander, 2 Dev. & Bat. 87 the court said, “ the levy operates as a lien,
 
 which sets apart the land levied on for the satisfaction of the creditor's judgment.'”
 
 After being thus set apart, what is there, we would enquire, to take it out of the custody of the law, and set it at large again before the debt be paid
 
 1
 
 We are speaking of the effect of the levy, as against the defendant himself. We can see many reasons why the levy of a
 
 fieri fa-cias
 
 should not divest the freehold, and why that can be done only by a sale and a sheriff’s deed. But we can see no reason, why the defendant should claim to have the levy discharged, so as to prevent any action on it, unless that action be immediate and continued. He is not injured by its being enforced at any distance of time, and as to him the
 
 *266
 
 law may justly preserve the lien until satisfaction of the debt be had.
 

 A purchaser from the defendant can be in no better situa-*’011 ven<^01'- That is the general condition of every person claiming under another, unless in particular instances of persons favored and protected by statutes or in equity. It is the direct operation of a lien, created by execution, to prevent the defendant from defeating the execution hyphenating, and to give to the process the same effect against the property in the hands of the purchaser as in those of the debtor himself.
 

 We think, then, that the writ of
 
 venditioni exponas
 
 issued from December, 1837, was an authority to sell this land. At most, it was irregular only and not void. The sheriff is bound to obey a writ of execution issued after the year and day.
 
 Dawson
 
 v Shepherd, 4 Dev. 497. It is only voidable at the instance of the party against whom it issues.
 
 Oxley
 
 v
 
 Mizle,
 
 3 Mur. 250. But, if the positions already laid down be correct, the court might properly refuse a motion from the defendant to set this writ aside for irregularity; or might properly allow the plaintiff to remove the appearance of irregularity by entering continuances. The reason is, that no harm is done to any person by allowing the writ to remain in force, and amending the record so as to make it appear regular. For if a
 
 scire facias
 
 had issued, it would have been to shew cause why execution should not issue, and the judgment would have been,
 
 haheat execuiionem ;
 
 upon which the question would immediately arise — what execution? The answer is, any execution that would suit the party^s case. He might either have an original
 
 fierifa-cias,
 
 or an
 
 elegit
 
 extending to one half of all the lands ; or, if he have a specific lien on particular goods or land, he must be entitled to the writ of
 
 venditioni exponas
 
 against those specific things. There seems to be no ground, on which he could be excluded from the latter writ more than the two former, unless the lien be entirely lost by the omission to enforce it for any one term — a point already considered. If a
 
 veditioni exponas
 
 can be sued at any time within a year and a day, it follows, that, after a
 
 scire facias
 
 to
 
 *267
 
 revive, the plaintiff may have the same writ after the year and day ; for he by the sc
 
 ire facias
 
 entitles himself to cution, as if the judgment had never become dormant. Consequently no injury has been done by dispensing with the
 
 scire facias
 
 in this case, and allowing the continuances to be entered ; for the debt was unpaid, and the defendant did not pretend that it had been satisfied, and on that ground move either to set aside the execution or to oppose the continuances on the roll.
 

 The opinion of the court, then, is, that the lien of the execution levied was not lost by the omission to keep up the executions from term to term j and for that reason we think the judgment erroneous.
 

 It will not be understood that this decision touches the rights of other creditors. They stand on a different footing from the defendant or his vendee. Purchasers from the party can see to their security by covenants. But the law does not warrant the title of property sold under execution ; and, therefore, for the purpose of enhancing the price as nearly to the value as possible, it makes its own sale an effectual title against persons having prior liens, who neglect to enforce them, until another has actually sold, though under a junior lien. Hence, when it was formerly thought that judgments
 
 proprio vigore
 
 bound land in this State, although a
 
 fieri fa-cias
 
 was issued, it was held, that, though the debtor could not alien the land, a sale by a
 
 fieri facias
 
 on a younger judgment, passed the title.
 
 Bell
 
 v
 
 Hill,
 
 1 Hay. 72.
 
 Ricks
 
 v
 
 Blount,
 
 4 Dev. 128. As between the'creditors, it is a fraud in one to hold up his execution until the other has sold, and then use it to avoid the sale.
 
 Palmer
 
 v
 
 Clark, 2
 
 Dev. 354.
 
 Bank of Newbern
 
 v
 
 Pullen,
 
 4 Dev. 297. But the law allows not such an immunity to a sale by the defendant in execution.
 

 Per Curiam. Judgment reversed, and
 
 venire da novo
 
 awarded.