RuffiN, C. J.
 

 In the year 183-1, Charles Creecy, of Chow-an, intermarried with Edith Goodman, a daughter oí William Goodman, of Gates, In 1837, Greecy, being indebted to several persons to an amount considerably more than he was able to pay, made a conveyance to a trustee of all his visible property to be sold, and the proceeds applied to certain debts specified, and towards the end of that year, .there was a sale, and after the proceeds were applied, a balance of seven or eight thousand dollars of his debts remained unpaid; and judgments were subsequently taken by several of the creditors. At the sale, one Noreom purchased the farm on which Creecy lived, and William Goodman purchased a negro woman and a work horse; and it was agreed between Noreom and Goodman, that they would work the farm in the year 1838, on their joint account, under the ¡superintendence of Creecy, as overseer; and, on his part, Goodman was to put in the said negro woman, and another, from his slaves at home, and two small white boys, who were the nephews of Creecy, and lived with him, and two work horses; and they were jointly to supply the plantation. The crop was made, and at the end of the year, Nor-com took his half of it, and then purchased the other half from Creecy, as the agent of Goodman, who was very infirm, and gave his bond therefor, payable to Goodman, for $542 50, which Creecy shortly after delivered to Goodman, in Gates. In March, 1839, Creecy made a contract with Richard Paxton for the purchase of a tract of land in Chowan, containing 77 1-2 acres, at the price of #352 50,
 
 *18
 
 which was then paid in the said bond oí Norcom, and another of one Eliiott, for $310, payable also to Goodman, and Paxton conveyed to Goodman, and delivered the deed to Creecy; and he, Creecy, took possession of the land, and resided thereon up to the year 1843. By his will, dated on the 4th of October, 1839, and a codicil dated in May, 1841, William Goodman devised a certain part of his estate, including the land bought from Paxton, to his only son, Jethro i). Goodman, in trust, for the separate use of his only daughter, Edith, during her coverture, and, if. she should survive her husband, in trust, then to convey the same to her absolutely; or, if she should die before him, in trust for any child, or children, she might leave surviving her; and, if there should be no such child, then for other purposes mentioned. William Goodman afterwards died, and in May, 1843, the tract of land was sold under executions on the judgments against Creecy, and purchased by the plaintiff, Page, at the price of $30, and the Sheriff made him a deed therefor. At that time, Creecy had absconded, and Jethro D. Goodman, the trustee, had a tenant in possession, against whom and the trustee, Page brought an ejectment; and in September, 1843, he also filed this bill against Goodman, the trustee, and Creecy and William Creecy.
 

 The bill charges, that the whole consideration, paid to Paxton for the land, belonged to Creecy, and that he and William Goodman procured the deed to be made to Good: man, with the intent to defraud the judgment and other creditors of Creecy, and enable Creecy to enjoy the land, and it states several circumstances tending to show, that Goodman did not, for a time, treat the land as his own. — r The prayer is, that the defendants may be decreed to surrender the possession, and convey the land to the plaintiff, and for general relief.
 

 
 *19
 
 Each of the defendants answered. Creecy admits the allegations in the bill to be true, and submits to the decree prayed for. The answers of the other two defendants state, that Creecy and his wife lived unhappily at the time of the purchase of the land from Paxton, and that the father had no intention to bestow anything on Creecy, but was induced to authorise Creecy to make the purchase for him, and in his name, in order to provide a home for his daughter, as Creecy would not remove to Gates, and William Goodman was too infirm to leave home. They state that William Goodman paid Creecy, in cash, the sum of $160, for the hire of his two nephews, in 1838, and for his part of- Creecy’s wages as overseer, besides advancing other sums to defray the expenses of the plantation ; and, therefore, that the crop did not belong to Creecy, but all belonged to Goodman; and they aver, that the whole price was paid with funds belonging to Goodman, and deny, positively, the fraudulent intent charged in the bill, or any trust whatever, for the benefit of Creecy, directly, or indirectly. The evidence tends strongly to sustain the answer of the trustee and Mrs. Creecy throughout, and it fully establishes that at least $310 of the purchase money, paid to Paxton, belonged to William Goodman, and that -Creecy had no other connexion therewith, than to carry it from Goodman to Paxton. But the Court does not consider it necessary to give any particular consideration to the evidence, or to make a declaration, that Norcom’s debt of $542 50, which formed a part of the price, belonged to Goodman or to Creecy ; because, admitting it to have been Creéey’s, and, also, that all the allegations of the bill, as to the covinous intention of those parties, are well founded, still, the opinion of the Court is against the bill. Creecy’s judgment creditors might have had relief on those facts, if
 
 *20
 
 they had filed their bill to have Creecy’s interest in the premises declared, and sold under a decree of the Court of Equity for their satisfaction, instead of proceeding to a sale under the execution at law.
 

 But Creecy had no such interest in the land as was subject to execution, according to the repeated decisions of the Court, and the necessity the plaintiff has found for coining into this Court, instead of proceeding with his ejectment plainly shows it. If Creecy had an
 
 interest
 
 in the land, it would be by way of secret trust in fraud of his creditors. That is what the plaintiff says in the bill is the truth of the case. But that, did not make the land liable to be sold on the executions under the statute, 13 Eliz., because the title of the land had never been in Creecy, or conveyed by him. Ho never had more than a trust in the land; and although the act of 3SIS authorises a sale of a trust upon
 
 execution
 
 against
 
 the cestui que
 
 trust,
 
 vet that
 
 means an honest trust, which at the suit of the
 
 cestui que trust
 
 would be upheld, and executed by
 
 the
 
 decree of a Court of Equity, and not one infected with fraud, in respect to which the Court would not act at the instance of either party. In other words, the act of 1812 authorises execution of a trust, which would be enforced between the
 
 cestui que trust
 
 and the trustee. As the bill states the case, undoubtedly Creecy could have had no relief against Goodman, and therefore the plaintiff, as the purchaser o-f Creecy’s title, is no better off. These principles however, require no further elucidation, as they were fully discussed in
 
 Dobson
 
 v
 
 Erwin,
 
 1 Dev. and Bat. 569, and repeated and applied in
 
 Gowing
 
 v
 
 Rich,
 
 1 Ire. 553, and in other cases,
 
 &cc.,
 
 affirmed at the present term in the opinion delivered by my brother Peaesox in
 
 Rhem
 
 v
 
 Tull. As
 
 the plaintiff' got nothing by the sheriff’s sale, he cannot, as purchaser
 
 *21
 
 merely, and without having the creditors before the Court, maintain his bill at all, but it must be dismissed with costs to the defendant, Goodman.
 

 Per Curiam. Decree accordingly.