CLIFTON v. OWENS.

---

W. B. CLIFTON v. A. L. OWENS AND J. E. REID, SHERIFF.

(Filed 12 January, 1916.)

**1. Executions—Levy—Realty—Possession.**

 The sheriff has neither property nor a right to possession under a levy on land, but only a naked authority to sell, and his sale transfers only a right of property to the purchaser; and he cannot deliver the possession, under the execution, without the consent of the one holding it.

**2. Executions—Levy—Personalty—Possession.**

 A levy of *fi. fa.* on chattels vests in the sheriff a special property which enables him to sell them after the return day, without a *ven. ex.*, and to deliver the possession to the purchaser.

**3. Levy—Conversion—Judgment Liens—Equity.**

Where lands are devised for life and by the terms of the will then to be sold and the proceeds distributed to designated persons, the interest of one of such persons may not be levied upon either as lands or personalty, though under the terms of the devise the lands will be regarded as personalty when so sold, the remedy being by an action in the nature of a bill of equity, at the proper time, by which the lien of the judgment creditor may be preserved and protected.

**4. Same—Devise—Lands—Personalty—Trusts and Trustees.**

A devise of lands for life to the widow, then with bequest to certain named of testator's children, "to have the said property, and the same to be sold and the money coming from said sale to be divided among" the testator's said children: *Held*, the intent of the testator as gathered from the terms of the will is controlling, and thereunder the devisees named have only the naked title, to be held by them in trust until the lands shall be sold, and the proceeds, upon distribution, go directly to them as personalty, under the equitable doctrine of conversion.

**5. Executions—Levy—Conversion—Life Estates — Distributions — Judgment Liens—Equity—Suits.**

Where under the equitable doctrine of conversion the legatees under a will are to take the proceeds of the sale of lands, after the falling in of a life estate, as personalty, one of such distributees has no interest in the property, during the continuance of the life estate, which is subject to levy under a judgment against him, the right of the judgment creditor to subject such interest to the satisfaction of his lien arising only upon the death of the life tenant. Revisal, secs. 629, 630, have no application.

**6. Executions—Levy—Conversion—Exemptions.**

Where after the falling in of a life estate in lands the lands are directed to be sold and the proceeds distributed and held as personalty, and the judgment creditor then brings suit to subject the interest of one of the distributees to the satisfaction of his judgment lien, such distributee may claim his personal property exemption therein.

CIVIL ACTION, heard by *Whedbee, J.,* at June Term, 1915, of WASHINGTON Superior Court, upon a case stated for his opinion, and the judgment of the court, in a controversy submitted without action under the statute. Plaintiff appealed.

The facts are as follows:

1. On 9 February, 1915, A. L. Owens regularly obtained judgment against plaintiff W. B. Clifton in the court of a justice of the peace in Washington County in the amount of $147.50, and said judgment was on said day properly docketed in the Superior Court.

2. On 24 March, 1915, said A. L. Owens, judgment creditor, caused an execution, regular in form, to be issued from the Superior Court of Washington County, directed to the sheriff, J. E. Reid, directing him, as sheriff, to levy upon and sell, to satisfy said judgment, the personal and real property of the said W. B. Clifton.

3. J. E. Reid, sheriff of Washington County, did on 2 April, 1915, duly levy upon said alleged interest of W. B. Clifton in the real prop-

erty mentioned herein, and pursuant to said levy did advertise the interest of W. B. Clifton in said real estate as required by law, said sale to be made on 31 May, 1915, it being the first day of a regular term of Superior Court for said county.

4. The only claim or interest which W. B. Clifton has in the real property herein mentioned, and now advertised for sale by the sheriff, descended to him under the last will and testament of his father, Thomas Clifton, which will is duly probated and recorded in the office of the clerk of the Superior Court of Washington County, North Carolina.

5. The will of Thomas Clifton as it appears of record in Washington County is as follows:

STATE OF NORTH CAROLINA—WASHINGTON COUNTY.

I, Thomas Clifton, of the above named county and State, being of sound mind and disposing memory, but considering the uncertainty of my earthly existence, do make and declare this my last will and testament:

(1) My executor, hereinafter named, shall give my body a decent burial and pay all funeral expenses, together with all my just debts, out of the first money which shall come into her hands belonging to my estate.

(2) I give and devise to my devoted wife, Penelope C. Clifton, the tract of land whereon I now reside, containing 40 acres, for her natural life, in satisfaction of her dower third in my land, and after, I will and bequeath said land whereon I now reside to my children, Samuel, David, Warren, John Benjamin [the latter the plaintiff herein], Ernest, and Lucy Clifton, and Lula, wife of George Keel, and to the children of Evora Skiles, now deceased, my daughter, to have the said property and the same to be sold and the money coming from the sale of said land to be divided among my said children just named, and an equal amount to my Skiles grandchildren to represent their mother's share as if she were living.

(3) I give and bequeath to my son-in-law, George Keel, $75 in money, to him already paid.

(4) I give and bequeath to my son, Samuel Clifton, $130 in money, to him already paid.

(5) I give and bequeath to John Skiles, my grandson by my daughter Evora, $60, to him already paid.

Items third, fourth, and fifth represent money already paid by me to the respective persons named, and I wish and devise to have these amounts deducted from whatever amount the sale of my land hereinbefore provided for shall bring to them, in order that all my children shall share equally.

(6) I hereby constitute and appoint my beloved wife, Penelope C. Clifton, my lawful executrix to execute this my last will and testament made by me.

In witness whereof I, Thomas Clifton, do hereto set my hand and seal this 23 September, 1893.          THOMAS CLIFTON.   [SEAL]

Duly witnessed and probated.

6. That unless restrained by law the sheriff of Washington County will proceed to sell at public sale the lands and property which he has levied upon, and the aforesaid sale is claimed by the plaintiff to be a wrongful invasion of his rights.   The plaintiff contends that he owns no present vested interest in land which could be sold under execution, and that his only equity or title is a right to share, as provided in the will of his father, in the proceeds which may be derived from the sale of the said land mentioned in the above will.   That this interest does not accrue until the death of the life tenant, Mrs. Penelope C. Clifton, who is now living, and that then plaintiff will be entitled, as against said A. L. Owens' judgment, to a personal property exemption of $500, as provided by law.   Or that, if the interest of plaintiff is now vested, he is entitled, as against said judgment, to said personal property exemption of $500, as under said will there has been a conversion of said property from real estate to personalty.

7. The defendants contend that the plaintiff's interest is a vested remainder in land, subject to the life estate of Penelope C. Clifton, who is yet living, and that, since the said plaintiff is not entitled to a homestead on account of the existence of the life estate in Penelope C. Clifton, the present right and remainder now vested in plaintiff in said land can be sold and conveyed by the sheriff under said execution.

8. The sole question presented here is whether or not the interest of plaintiff is such an interest in property, whether real or personal, as that at present it can be sold by the sheriff under the execution above mentioned.

                                        L. W. GAYLORD,
                                        *Attorney for Plaintiff.*

                                        W. M. BOND, JR.,
                                        *Attorney for Defendants.*

JUDGMENT.

This cause coming on to be heard upon this controversy submitted without action, the parties being properly before the court: It is upon said agreed facts considered and adjudged that W. B. Clifton now owns a vested remainder in fee simple in and to an undivided interest in the land described in complaint, as devised to plaintiff by his father.   That said W. B. Clifton is not entitled to a homestead allotment in said land, and that his said undivided interest is subject to the lien of A. L.

Owens' judgment, and the sheriff, J. E. Reid, by virtue of his office shall sell the undivided interest of W. B. Clifton in said land set out in the case agreed.    This 21 May, 1915.          H. W. WHEDBEE, *Judge.*

Plaintiff excepted and appealed to this Court.

Plaintiff groups his exceptions and assigns errors as follows:

1. The court erred in signing the judgment as set out in the record.

2. The court erred in adjudging that, under the will of Thomas C. Clifton, as appears in the record, there was not a conversion of the real estate mentioned therein from real estate to personalty.

3. The court erred in adjudging that the interest of W. B. Clifton was an interest in land and as such subject to levy and sale by the sheriff under execution.

*L. W. Gaylord for plaintiff.*
*W. B. Bond, Jr., for defendant.*

WALKER, J., after stating the case:   The levy of the sheriff was not upon personalty, but upon land, as realty; so that if he could have levied upon it as personalty, he did not do so.   In order for such a levy to be validly made, the personalty must be taken into the sheriff's possession or placed under his control.   *Gilkey v. Dickerson,* 10 N. C., 293; *Tredwell v. Rascoe,* 14 N. C., 50; *Smith v. Spencer,* 25 N. C., 256.   As held in *Barden v. McKinnie,* 11 N. C., 279, the levy of a *fi. fa.* on chattels vests in the sheriff a special property which enables him to sell them, after the return day, without a *ven. ex.;* but a levy on land gives him neither property nor a right of possession; he has only a naked authority to sell, and his sale transfers a right of property to the purchaser, and he cannot deliver possession, under such an execution, without the consent of the tenant or he who has it.   It is because of this distinction in the levy of an execution upon realty and one upon personalty, and also because of the peculiar and intangible nature of the property, when considered merely as converted without being actually so, that the courts have uniformly held that, when such an equitable conversion has taken place, the property cannot be levied upon, under execution, as land nor as personalty.   *Paisley v. Holshn,* 83 Md., 325; *Crouse v. Hardt,* 47 *ibid.,* 433; *Turner v. Davis,* 41 Ark., 270; *Chick v. Ives,* 90 N. W. (Neb.), 751; *Hunter v. Anderson,* 152 Pa. St., 386; *Henderson v. Henderson,* 133 Pa. St., 399; and as an analogy, *Walker v. Killian,* 62 S. C., 482.

It is said in 9 Cyc., at p. 852, that "Where a testator directs his executor to sell his land and divide the proceeds among designated legatees, it is well settled that such legatees have no estate in the land which is the subject of lien or execution, and that an obvious result of con-

version is the right of the beneficiary to deal with the property as in its changed form before such change has been actually affected." It may be asked, If this be so, what is the creditor's remedy? It is as fully decided as the other proposition. Conversion is altogether a doctrine of equity; in law it has no being, and it is admitted only for the accomplishment of equitable results, and, of necessity, it must be limited to its end. *Foster's Appeal,* 74 Pa., 397. It is, therefore, highly proper that a court of equity should deal with it in enforcing the rights of beneficiaries as well as others having claims against them, and, besides, having taken away the remedy by the process of execution, as it cannot be treated as land, because of the conversion, though a notional or imaginary one, which renders it so intangible in its nature that the officer cannot lay his hands upon it and reduce it to his possession, it is fitting, if not obligatory, that equity should furnish some adequate and efficacious remedy by which the property or interest of the judgment debtor thus derived may be subjected to the claims of his creditors; and it has done so. The subject is fully and exhaustively treated in a very able and learned opinion by *Justice Eakin* in *Turner v. Davis,* 41 Ark., 270. It appeared in that case that a judgment creditor of a beneficiary under a trust conversion had levied on and sold his interest in the realty, as land, under an execution at law to satisfy his judgment, and another judgment creditor afterwards proceeded in a court of equity to set aside the sale and to have his interest sold under a decree of the court by a commissioner or special master. It was held that there had been an equitable conversion of the land into money, and it left no estate in the beneficiary which was subject to levy and sale under execution at law, and that as one entitled to the proceeds of the sale of land has no interest in the *land* itself, subject to execution, the judgment creditor's remedy was in chancery, which is an adequate substitute for the remedy at law against the land, if there had been no conversion. *Justice Eakin* said: "There being no interest in the land, considered as land, it logically follows that a creditor of one entitled to the proceeds mistakes his remedy by levying upon the land itself. Everything substantive eludes his grasp. His proper course is to pursue the proceeds, and to take steps to have them realized, which is within the power of a court of equity. Otherwise, he would have it in his power to compel his debtor to elect to take the land in its natural character against his own wishes, and against the will of the other beneficiaries, who are entitled to have the whole interest in the land sold at once, at the best rates, for division of proceeds; in other words, to compel the debtor to do what he has no right to do." *Justice Eakin* further remarked that it could not be conceived how the question is affected, or even touched, by the statute regarding property subject to execution, which is substantially like ours, subjecting legal and equitable interests to ordinary executions at

law; and in the nature of things this must be true, and his reasoning upon the entire question is so conclusive as to leave no peg to hang a doubt on.

Before leaving this part of the case, we will again emphasize the fact that the sheriff has not attempted to levy upon this property, as personalty, and he could not do so, for such a thing is physically impossible, it not being anything that he can seize and take into his possession or bring under his control; but he has levied only on the land itself, when the judgment debtor plainly has no interest therein, for he takes not that under the will, but the proceeds of its sale. As to the lien of the creditor, it does not exist under the judgment, as there was no land for it to rest upon, but by filing his bill in equity (now his complaint in a civil action), the judgment creditor acquires what is equivalent to a lien as against other creditors from the date thereof, it being regarded and treated as in the nature of an equitable *fi. fa.,* which gives priority or preference to the suing creditor and prevents the debtor from defeating, by a conveyance, the object of the suit. *Dixon v. Dixon,* 81 N. C., 323. Equity took jurisdiction, at the instance of a judgment creditor, in two cases, first as an aid to the enforcement of process at law, by removing some impediment or hindrance in the way of its effective execution, and, second, where it was original, for the purpose of granting relief, on the ground that the debtor had an interest which is not accessible to the creditor by the ordinary process of execution, and sale thereunder, but which should in good conscience be applied to the satisfaction of his debts, and, further, because otherwise the creditor would be without remedy. *Dixon v. Dixon, supra; McKay v. Williams,* 21 N. C., 398; *Brown v. Long,* 36 N. C., 190. The case of *Dixon v. Dixon, supra,* also decides that property converted from its original nature, as land into money, is not subject to the lien of a judgment or to sale under execution issued thereon, although the statute gives a lien, under the judgment, on all the real property of the debtor in the county, which, by construction of this Court, embraced both legal and equitable estates, citing *Wall v. Fairley,* 77 N. C., 105; *Page v. Goodman,* 43 N. C., 16.

Having disposed of these preliminary matters, the way has been cleared for an approach to the remaining and pivotal question in the case, which we will now consider, viz., Whether there has been a conversion of the land into personalty by this will.

Equitable conversion is a change of property from real into personal, or from personal into real, not actually taking place, but presumed to exist only by construction or intendment of equity. "Nothing," it has been said, "is better established than this principle, that money directed to be employed in the purchase of land, and land directed to be sold and turned into money, are to be considered as that species of property into which they are directed to be converted, and this in whatever man-

ner the direction is given, whether by will or by way of contract, marriage articles, settlement, or otherwise; and whether the money is actually deposited or only covenanted to be paid, whether the land is actually conveyed or only agreed to be conveyed, the owner of the fund, or the contracting parties, may make land money or money land. . . . By this and similar declarations the judges do not mean to assert a solemn piece of legal juggling without any foundation of common sense, but simply to lay down the practical doctrine that for certain purposes of devolution and transfer, and in order that the rights of parties may be enforced and preserved, it is sometimes necessary to regard property as subject to the rules applicable to it in its changed and not in its original state, although the change may not have actually taken place." Bispham's Equity (6 Ed.), sec. 307. Conversion may arise not only under a trust in a will, but also under settlements and other instruments *inter vivos,* as we have seen. In order to effect a conversion, it may be stated generally, that in a trust the direction to convert must be imperative, and in a contract the agreement must be binding. In the case of a trust created by will or otherwise the duty to convert must be mandatory and not left merely to the option or discretion of the executor or trustee, and this imperative quality may be impressed upon the trust either expressly or by the use of direct words of command, or impliedly or indirectly by a disposition of the property on such limitations as necessitate a change in character of it. "If a testator devises land to be sold, or orders or directs that the same shall be sold, it is obvious that it is the imperative duty of the trustees to make the sale. They have no discretion in the matter. They are simply to turn the real estate into personalty and to apply the money thus realized to the purpose designated in the will. This is the plainest case of conversion." Bispham's Equity, p. 426.

So it is said that the doctrine of conversion is not confined to those testamentary dispositions only in which imperative words are used, or wherein limitations which can only be effectuated by a conversion exist. It is to be applied to all those cases in which a general intention of the testator is sufficiently manifested to give the property to the donee in a condition different from that in which it exists at the time when the will goes into effect. A mere testamentary power of sale, vested in executors to sell real estate, will not work a conversion; but if to the power there is added a direction, a conversion will be effected. There must be an intent to convert, either express or implied. The question always is, Did the testator intend to give money or to give land, and has that intention been sufficiently expressed? Once arrive at the intention, by proper rules of interpretation, and the property will then be considered as impressed with that character which the testator designed it should have when it reached the hands of the beneficiary. While a discretion

in the trustees as to whether a sale shall or shall not take place will of course prevent a conversion, yet a mere discretion as to the *time* or manner of sale will not hinder a conversion. Bispham's Equity, p. 426, sec. 312. *Benbow v. Moore,* 114 N. C., 263. The effect or result of this doctrine of equity is that the court carries out the principle of conversion in all its consequences. Thus, money directed to be turned into land descends to the heir; and land directed to be converted into money goes to personal representatives; money belonging to a married woman which is directed to be converted into land is liable to the husband's curtesy; an alien, though incapable of taking land for his own benefit, can take the proceeds of land directed to be sold; and in many other cases the enjoyment of property will be determined by the rules applicable to it in its changed and not in its original state. Bispham's Equity, p. 428. But it is said that the property is not for all purposes to be treated as in its converted state, the constructive or notional conversion not being equivalent always to an actual or a real conversion, and there is an important qualification of the doctrine, not applicable, though, to the facts of this case, that the conversion is limited to the purpose of the donor, and, therefore, in the event that the purpose fails, the property will devolve according to its original character. But we need not enlarge upon these questions, and have mentioned them only as being necessary to a complete understanding of this principle of equity, in all its bearings and as to all of its constituent elements, and also its limitations, so far only as they have relation to the questions now before us.

The correlative doctrine of reconversion is well understood to be the imaginary process by which a prior constructive conversion is annulled and taken away, and the property restored, in contemplation of equity, to its original actual quality, or where the direction to convert is revoked by act of law, or by the parties entitled to the property, which they may elect to do (Snell's Equity, 160), but where there are several beneficiaries they must all, as a general rule, unite in the election in order to make it effectual. Bispham, sec. 323; *Holloway v. Radcliffe,* 23 Beav., 163; *Beatty v. Byers,* 18 Pa., 105. A remainderman cannot elect so as to affect injuriously the interests of those who own prior estates; nor can a lunatic himself elect, as being devoid of capacity to make a discreet choice, or to act for himself; nor can an infant make such a binding election ordinarily, for the same reason; but it may be done for him when found to be for his benefit. 19 Cyc., 855, 866; 2 Spence's Eq., 271; *Crabtree v. Bramble,* 2 Atk., 686; *Cookson v. Cookson,* 12 Cl. and Fin., 146; Snell's Eq., 162; *Ashby v. Palmer,* 1 Mer. Ch., 296; *Seeley v. Jago,* 1 P. Wms., 389; *Robinson v. Robinson,* 19 Beav., 494; Bispham's Eq., sec. 324. Married women could, formerly, elect by means of the pious fraud of a sham purchase of real estate, and subsequently levying

a fine, or giving her consent in open court to receive the money or personalty. *Oldham v. Hughes,* 2 Atk., 452; *Forbes v. Adams,* 9 Sim., 462; Snell's Eq., 163, 164. But all this has been greatly modified and the procedure made more simple and sensible by enlightened modern legislation.

Reconversion sometimes takes place by operation of law. This occurs when a fund directed or covenanted to be laid out in real estate comes into the hands of the person for whose benefit the purchase is to be made, and in whom the entire right is vested, and he dies without making any declaration of his intention. The fund is then said to be "at home," and "being in the hands of one without any other use, but for himself, it will be money, and the heir cannot claim."

There is some analogy between the equity of a creditor to subject the interest of his debtor who is entitled to a part of the proceeds of sale in the case of a conversion and that of a creditor to enforce his claim against a debtor having only a "right in equity," in respect of land, instead of an equitable interest or estate therein, as in *Nelson v. Hughes,* 55 N. C., 33, where the Court held, by *Pearson, J.,* that the mere right to have one person declared a trustee for another could not be sold under execution, the remedy being in equity alone. The Court said, at p. 59: "But it is asked, How are creditors to subject these 'rights' of debtors to the payment of their debts? The reply is, as was said in *Page v. Goodman,* 43 N. C., 16; *Thigpen v. Pitt,* 54 N. C., 49, and many other cases: The creditors may have relief by filing a bill in equity to have the interest of their debtors declared and sold under a decree." In our case the entire land would have to be sold according to the direction of the will, and the debtor's share applied to the satisfaction of the claim, subject to his right of exemption in personal property.

The will in this case gives a life estate in the land to the mother, and an estate, by way of remainder, to the children and grandchildren after her death, when it is to be sold and the money divided as directed. Under this provision of the will the conversion will not take place until the life estate has been determined by the death of Mrs. Clifton. The creditor of one of the legatees is as much bound by the terms of the will as the legatee would be had there been no debt, and can only subject to the payment of his claims the interest of his debtor. They both must take, if at all, *per forman doni* (according to the form of the gift), and the mere fact that one of the beneficiaries has become indebted does not alter the rights of the parties under the will. As the testator directed a sale of the land after the death of his widow, the equitable conversion of the land into money will take place at that time. "When there is an imperative direction to sell, unless the conversion is expressly directed to be made at a specific time in the future, or upon the happening of some particular event, the conversion takes place as from the death of

the testator.   9 Cyc., 839.   In this case the time for the conversion to take place is distinctly specified, viz., at the death of the widow, which is sure to happen sooner or later, and the conversion will therefore take place only at that time.   It is said in 9 Cyc., 838, that there is some conflict upon this question between the cases, but this Court is placed among those which have adopted the rule stated above.   *Brothers v. Cartwright,* 55 N. C., 113; *Powell v. Powell,* 41 N. C., 50.

But if the conversion took place from the testator's death, according to the majority rule, we think there would be no practical difference in this case, for the sale, under the direction of the will, could not be made until the time for it as fixed by the will had arrived.   In the meantime the naked legal title is vested in the devisees named, as it would have been in the heirs by descent if there had been no devise to them.   *Ferebee v. Proctor,* 19 N. C., 439, 446.   That case holds that "nothing can defeat the heir but a valid disposition to another.   Whatever is not given away to some person must descend.   The heir takes, not by the bounty of the testator, but by force of the law, even against the express declaration of the testator to the contrary.   If the will does not devise the land, but creates a power to sell it, then, upon the execution of the power, the purchaser is in under the will, as if his name had been inserted in it as devisee.   But, in the meantime, the land descends, and the estate is in the heir.   The power is not the estate, but only an authority over it, and a legal capacity to convey it.   These are elementary maxims."   But this title by devise or descent is held in trust only for the purpose of eventually executing the intention of the testator that the land should be sold and the proceeds of sale divided among the beneficiaries named in the will as directed therein, so that they will take the property as personalty, and not as land.   *Ferebee v. Proctor, supra,* illustrates this principle.   There the executor had but a bare power to sell, not coupled with any interest, and the land which was not devised to him with the power descended to the heirs, and upon the execution of the power it passed from them to the purchaser at the sale.

It is not an interest in land which is subject to sale under the provisions of our statute.   Revisal, secs. 629 and 630.   The heir or devisee has but the naked legal title, and no beneficial interest in the land out of which his creditor could realize anything, and it would be vain and idle to sell it, and for that reason our statute does not provide for its sale.   The heir or devisee does not hold the land in trust for the party entitled to the proceeds of 'sale under the direction for conversion, in the sense that the latter has any equitable estate in the land which would have a salable value, but the legal title is left in the devisee or heir, as it cannot be suspended until the conversion takes place, when it automatically passes to the purchaser at the sale.·   This being so, the creditor of a party entitled to the proceeds of sale, or a part thereof,

cannot levy or sell the land, as land, as his debtor has no beneficial interest · therein, because he takes it as personalty, nor can he *now* proceed in equity, nor until the conversion takes place at the death of the tenant for life, according to the will of the testator and the form of the gift. If the conversion had taken place as from the death of the testator, according to the majority rule, the actual conversion by a sale of the land could not have been made until after the death of the widow, as that is the time fixed by the will for the land to be sold. The testator had the right to annex any lawful condition to his gift and to prescribe the manner and time of its enjoyment.

The result is that the court erred in its judgment directing a sale of the land by the sheriff. His levy, sale, and deed to the purchaser are all void and of no effect, and will be so declared, and further, the deed will be set aside and properly canceled, so as to remove any cloud from the title and to untrammel the regular conversion of the land as directed in the will. It will be further declared that the defendant A. L. Owens is not now entitled to have a sale of the land for the purpose of its conversion into money under the will, and the subjection of plaintiff's share thereof to his claim, but this will be done without prejudice to his right to proceed hereafter, and at the proper time, to enforce his equity. There was error in the judgment of the court.

Reversed.