Ruffin, C. J.
 

 The action is for a female slave and her seven children. The deed, under which the parties re spec-* lively claim, conveys to Mary W. Spears “ a certain negro woman by the name of Sylvia, and her increase, so long as the said Mary may live, and after her decease, for said ne-groes to belong to the issue of the said Mary’s body, if any there be; and if there should not be, at the said Mary’s death, any of her issue, then the said negroes to go to her nearest kindred by blood.”
 

 It does not seem to have 'been adverted to on the trial, though it is pretty certain, that neither of the present parties has a title to most of the negroes in dispute. The woman Sylvia and her issue, born after the execution of the deed, only, can pass under the conveyance of her and “
 
 her increase Cole
 
 v
 
 Cole,
 
 1 Ired. 460; and those bom before yet belong to Rooker, the original owner. As the deed was executed in August, 1839, and the action was brought in January, 1841, it is not probable that more than one child, if any, was born in the interval. However, all the questions made at the trial, apply to the mother herself; and, therefore, must be determined.
 

 
 *391
 
 If the limitation over to the
 
 “
 
 issue” of Mrs. Spears, after a life estate to herself, be good, it can only be under our Statute of 1823—Rev. St. c. 37, s. 22; whereby limitations of slaves by deed are made effectual, if they would be so in a will. At common law, there could be no remainder añera life estate in a personal chattel, created by deed. The case does not expressly state, what is the law of South Carolina on this point. But we suppose that we must take such a limitation to be void there: because we know that they brought from England the common law, as we did, and, therefore, that it still prevails, except as it may be altered by statute; and, especially, because, on the trial, the plaintiffs insisted that the limitation operated und'er the law of North Carolina, in contradistinction to that of So. Carolina,. which we understand to be an admission that it was not good in the latter law. If, then, the deed took effect under the law of South Carolina, and not under ours, it is not material to consider how the particular limitation would be regarded, had the deed been made in this Stale. And we are of opinion that this instrument was executed and delivered in South Carolina, so ns to become completely a deed there; and, consequently, that the absolute property in the negro Sylvia, rested in Mrs.
 

 Spears, and the gift over to her issue is void.
 

 When Rooker gave the deed to his son, it was not with the view that he should keep it for him, the donor; so that it might be under tho control of the father, even for any short period. The son did not have the possession of the deed, as the agent for the father, for keeping it. Nothing like that was said,t nor can such a thing be inferred from any part of the transaction, or from any purpose which can he supposed to have actuated the donor at the time. He had no reason for withholding the immediate delivery of the deed, or postponing its operation.
 

 If he could by parol constitute the son his agent to deliver a deed, sealed by himself, we see nothing to induce a belief, that this was an act of that character. Did he mean that the deed should never take effect in case he or his daughter should die. before it actually came to her hands?
 

 Why he should have so intended, cannot be imagined. If,
 
 *392
 
 on the contrary, the purpose was, that the interest which the deed purports to convey, should take effect at all events, it follows that, in delivering the deed to his son, he meant to part, and did part, with all dominion over the instrument; and, therefore, that the delivery to him was a delivery for the donees. When the maker parts from the possession of a deed, and directs it to be delivered to the grantee, without any condition expressed, there is a presumption that it was then delivered as a deed for the benefit of the grantee- Such a delivery to one for another makes the deed operate presently, and until it be refused by the grantee, which was never thé case here; but, on the contrary, it was accepted. These positions are of such frequent occurrence as to require no discussion at present; but it is sufficient to refer to the cases of
 
 Bank of Newbern
 
 v
 
 Pugh,
 
 1 Hawks 198;
 
 Tate
 
 v Tate, 1 Dev. & Bat. 22; and Shep. Touch. 57-8.
 

 It is said, however, although it be a general principle, that the efficacy and construction of contracts depends upon the
 
 lex loci
 
 contractus, yet that this case falls within an established.exception. Which is, that where a contract is made with a view to its operation in another country, then the law of the place in which it is to be performed, or the
 
 lex rei sites
 
 furnishes the rule, upon which the efficacy of the instrument Is to be judged. We think, however, that this is not a case of that kind. In the first place, this is not an ex-ecutory agreement, to be performed any where; but it is an executed conveyance of a slave. It is true, the subject and the donee were, at the time, in this State. But the deed does not so state, nor contain any reference thereto. There is no ground for the assumption that the deed was intended to have any peculiar operation under the law of North Carolina, contradistinguished from the law of South Carolina, or, from the law of the civilized world generally, whereby the alienation of personal property is permitted to the owner. The parties may have been aware, that by the laws of some countries slavery is not recognized, and that the instrument could not there operate: not however by reason of the particular limitations to one for life, and then to her issue, but because negroes were not there the subjects or sale and con
 
 *393
 
 veyance. But, undoubtedly, the maker of this deed did not intend or expect that it would have effect by the law of North Carolina, and by that singly or merely; but he expected that it would, and meant that it should, enure to the benefit of the grantees in every place in which slaves might bo given, or sold and conveyed. This is a very different question from that which relates to the forms and ceremonies of a contract, made in one place for the Conveyance of personal property situate in another, so as to make it effectual against creditors or other persons, having claims on the property'under the laws of the country in which it is. There is no obligation on the tribunals of a country to defeat peculiar rights conferred by their own law on their own1 citizens, by sustaining a contract not executed in conformity with that law. But here the maker of the deed' has, by hi® domestic law, and .by ours also, parted with all his property in the subject, at all events; and the only question is, to whom he has by the conveyance transferred it? Is it to the person in whom the deed would vest it, by the law of his own country in which lie executed it? Or is it to one in whom, according to the limitations contained in the deed, it would be vested by the law of another country to which' no reference is made, but in which the subject, in itself transitory, happened to be at the time? Clearly, we think, the maker of the deed cannot be said to have had a view to any other but his own law; and, therefore, that must determine the construction of the instrument. For this reason the judgment was, in our opinion, rightfully given for the defendant, and must be affirmed.
 

 Per Curiam, Judgment affirmed.