On the trial before his Honor, Judge Settle, at NORTHAMPTON, on the last Fall Circuit, the case was substantially this: In 1843 Thomas Payne conveyed the slave in controversy to one Turner, in trust to secure a debt due by bond, on which John Chambliss and four others were sureties. All these parties then resided in the State of Virginia. In July, 1844, the trustee sold the slave, and Chambliss and his cosureties became the purchasers. The bond recited in the said deed of trust had meanwhile come rightfully into the possession of one W. T. Maclin; and the purchasers at the trustee's sale, instead of paying the price of their bid for the slave, executed their bond to Maclin for the amount, and took up the one on which they were Payne's sureties. The *Page 91 
slave was permitted to remain in Payne's possession, and in July, 1844, he removed to this State, with the slave. In September, 1846, Maclin wrote to Chambliss as follows:
"Dr. Payne and myself have entered into an agreement about the balance due me on the bond you hold against him in my favor, and also in regard to Washington. He will pay you on Monday the balance due yourself and others, on account of purchase of Washington, leaving unpaid only the amount due me, etc.
(Signed) W. T. Maclin."
Payne paid Chambliss and others, purchasers at trustee's sale, and the debt to Maclin was thereby discharged, except as to the amount of $379; for which amount Maclin released Chambliss and his copurchasers from all liability to him, and in consideration therefor, took from four of them a bill of sale, as follows:
"7 September, 1846. Received of William T. Maclin the sum of $379, for the purchase of Negro man, Washington, bought by us from Jo. Turner, trustee, in a deed from Thomas Payne. J. R. Chambliss, and others."
This bill of sale was executed in Virginia, where all the (83) vendors resided. Payne and Maclin lived in North Carolina at this time; and the slave was in the possession of Payne by the permission of Chambliss and others. Maclin afterwards got possession of the slave — how, it did not appear — and sold him publicly in the State of Virginia, the plaintiff becoming the purchaser and taking a bill of sale. Maclin and plaintiff both lived in Virginia at the time of this sale; and it appeared that by the laws of that State, these several bills of sale were sufficient to pass title to slaves without registration, or a subscribing witness.
This bill of sale was executed in Virginia, where all the (83) vendors resided. Payne and Maclin lived in North Carolina at this time; and the slave was in the possession of Payne by the permission of Chambliss and others. Maclin afterwards got possession of the slave — how, it did not appear — and sold him publicly in the State of Virginia, the plaintiff becoming the purchaser and taking a bill of sale. Maclin and plaintiff both lived in Virginia at the time of this sale; and it appeared that by the laws of that State, these several bills of sale were sufficient to pass title to slaves without registration, or a subscribing witness.
The defendant, to support his title, offered in evidence a deed dated September, 1848, made by Payne to the defendant, Phillips, conveying the said slave, in trust to secure the payment of certain debts; and having gotten possession of the slave (how, it did not appear), the defendant sold him publicly in the town of Jackson, Northampton County, in June, 1849. Payne was insolvent when he removed to this State, and continued so.
The defendant objected to the plaintiff's recovery, on the ground of the defect in the bill of sale from Chambliss and others to Maclin, because there was no subscribing witness, and it had not been registered. *Page 92 
His Honor, the presiding judge, overruled the objection, and charged the jury, that if they believed the testimony, these requisites were not necessary by the laws of Virginia, where the contract was made.
There was a verdict for the plaintiff, and judgment having been rendered thereon, the defendant appealed.
As a general rule, the lex loci contractus governs; but he submitted this falls within the class of excepted cases; and for this referred to Story's Conf. L., 605, and note of Burge on same page, ibid, 733; Morrow v.Alexander, 24 N.C. 388, and page 393 of opinion.
The facts show there was a sale and actual delivery from Chambliss to Maclin. Payne was Maclin's agent, had possession of the slave when sold, and a sale to one having possession is a sale with delivery. (Epps v.McLemore, 14 N.C. 345.)
But if not so, then as the contract of sale was made in Virginia, it will operate by the law of the place where made, and was effectual to pass title. (Anderson v. Doak, 32 N.C. 295; Morrow v. Alexander, 24 N.C. 388; Story Conf. L., 385.) This will be so, unless where creditors or purchasers of the vendor, at the place where the property is situated, intervene, and their rights come in conflict with the vendee under the foreign law. Story Conf. L., 380, 395.)
The defendant is not a creditor, and had he been one, Payne had no such interest as could have been reached by execution. (Gowing v. Rich,23 N.C. 553; Griffin v. Richardson, 33 N.C. 439; Page v. Goodman,43 N.C. 16.) His interest could have been reached in equity only. *Page 93 
Nor is the defendant here a bona fide purchaser, seeking to avoid a former fraudulent conveyance of his immediate vendor. He is but a wrongdoer, and there is no reason why the lex domicilii should not prevail.
The case present the single question, whether the bill of sale from Chambliss and others to Maclin, which the plaintiff claimed was sufficient, as against the defendant, to pass the title of the slave, Washington. The defendant's counsel contend that it was not, because it was neither proved and registered, nor had a subscribing witness, as required by our statute laws. The counsel admit the general rule, that the bill of sale being executed in the State of Virginia where the vendors lived, and where neither a subscribing witness nor probate and registration were necessary, the law of that State must determine (85) its validity. Story's Conf. L., section 380, et seq.; Andersonv. Doak, 32 N.C. 295. But they insist that where creditors are concerned, the lex rei sitae must prevail, it being the paramount duty of every State to take care of the interests of its own citizens; and for this they cite the case of Oliver v. Towns, 14 Martin, Louisiana Rep., 93, stated and fully commented upon by Judge Story in his Conf. Laws, section 387, et seq. The doctrine established in that case has been very recently recognized in this Court as the law of North Carolina. Moye v. May,43 N.C. 131. We now acknowledge its authority, but do not consider it applicable to the question before us. It is the personal chattel of the vendor who owns it, which will be taken and applied to the payment of his debts, in the country in which it is situated, when it has not been transferred according to the laws of that country; but a sale by a mere bailee of the chattel, is neither within the letter nor the reason of the rule. The case referred to would be in point, were the defendant claiming as a creditor, or under a creditor of Chambliss; but in truth he claims under Payne who had no title — who was only a bailee of Chambliss at the time when he sold to Maclin. Payne's possession being that of a bailee merely, was not adverse to Chambliss — was in law the possession of Chambliss himself — and there was therefore nothing to prevent the full application of the general rule, that the lex loci contractus must determine the sufficiency of the bill of sale. The judgment must be affirmed.
PER CURIAM. Judgment affirmed.
Cited: Satterthwaite v. Doughty, post, 314. *Page 94