### W. LYNCH v. C. R. JOHNSON ET ALS.

(Filed 31 May, 1916.)

**1. Deeds and Conveyances—Trusts—Delivery by Mail—Trials—Questions of Law.**

Where two purchasers of lands have them conveyed to one of them to be held in trust for both, and the holder of the legal title executes a good and sufficient deed to the other for the latter's interest in the lands, and deposits the deed in the postoffice in an envelope properly addressed, by mailing the deed the grantor parts with his authority and control over it,

LYNCH *v.* JOHNSON.

this passes the title in the property to his grantee, whether the latter was aware of the fact or not, it being assumed that he will accept the title to the lands for which he has paid; and where, in an action involving this question, the evidence of both parties is harmonious, such delivery will be held valid as a matter of law.

**2. Deeds and Conveyances—Delivery by Mail—Trusts—Title.**

Where the holder of the legal title to lands in trust for himself and another executes and mails to his *cestui que trust* a deed sufficient to pass the title, the trust estate ceases and the grantee holds the legal title to his part of the lands under his deed.

**3. Same—Bankruptcy—Registration—Laches—Title—Notice.**

Where a valid delivery of a deed to lands is made by mailing the deed to the grantee, which he has not received, and waits for fifteen years after receiving notice of the fact, and three years after his partner has become a bankrupt and the lands sold to a purchaser at the bankrupt sale, without demanding the reëxecution of the deed or taking legal steps to secure it (Revisal, sec. 336): *Held,* the trustee in bankruptcy, being regarded as a purchaser for value under the amendment to the Bankrupt Act of 1910, acquires a valid title as against the holder of the unregistered deed, under Revisal, sec. 980, which no other formal notice will affect, which title inures to the purchaser at the bankrupt sale.

**4. Deeds and Conveyances—Delivery by Mail—Return Address.**

The valid delivery of a deed by mail is not affected by the fact that the grantor's return address was given on the envelope, though it appears that in fact the grantee did not receive the conveyance and that it was not returned to the grantor.

HOKE, J., concurring in result.
WALKER and BROWN, JJ., writing concurring opinions.
ALLEN, J., dissenting.

PETITION to rehear.

*Aydlett & Simpson for plaintiff.*
*Small, MacLean, Bragaw & Rodman for defendants.*

CLARK, C. J. This is a petition to rehear this case, reported 170 N. C., 110, in which the opinion was filed 17 November, 1915. On the same day we filed another opinion, *Hinton v. Williams,* 170 N. C., 115, on the same point, both decisions being rendered by a unanimous Court. The petition to rehear presents no question that was not discussed and considered on the former hearing, and no authority or argument appears to have been overlooked.

In the former decision we held that as the plaintiff and the defendants claimed under a common source of title, the defendants' deed being recorded and the plaintiff claiming under an unrecorded deed, the plaintiff was not entitled to recover, and that since the amendment of 25 June, 1910, to the Bankruptcy Act the conveyance to the trustee in bankruptcy had exactly the same effect as if it had been made (under the Connor Act) to a purchaser for value.

The evidence, in brief, is that in 1895 C. R. Johnson purchased a tract of land from W. E. Shallington and received a deed therefor in consideration of the payment of $550. The plaintiff Lynch alleges, and his witness Johnson testifies, that Lynch paid him one-half of this amount and that he agreed to convey one-half to said Lynch. He further testified: "Shortly after I purchased this land in 1895 and within four or five years thereafter I made, executed, and acknowledged a deed conveying a half interest in the same to the plaintiff Lynch. I placed this deed, in a stamped envelope with my return address on it, in the postoffice, directing the same to the plaintiff. Mr. Lynch told me afterwards that he did not receive this deed. I was adjudged a bankrupt in the District Court of Virginia in 1911; the property described in this action was sold on 4 May, 1914. I did not tell Mr. Davis (the trustee in bankruptcy) or any one else that Mr. Lynch claimed an interest in the same. After the sale was made I asserted a right of dower in the entire tract in behalf of my wife, and I executed with her a deed to the Juniper Corporation (the purchaser), releasing her right of dower in the same. The deed which I mailed to Lynch bore my return address. The deed was never returned to me. I have not seen the same since I mailed it." The plaintiff Lynch also testified: "Johnson told me some time ago that he had executed a deed to me for a half interest in this land; that the same had been mailed to me. I never received this deed. I have never listed the property for taxation since it was purchased in 1895."

It is sufficient that we rest the decision on the uncontradicted testimony of the plaintiff's witness, Johnson, that he duly executed and acknowledged the deed and placed it in the postoffice postpaid, directed to Lynch, and with Johnson's return address on the envelope, and that the deed was not returned to him. Johnson testifies that he told Lynch of this execution and deposit of the deed in the postoffice and Lynch testifies that Johnson so told him. There is no evidence contradicting this fact. This was a delivery to the addressee and completed the execution of the instrument, for there was nothing more the grantor could do. This was so held in *McKinney v. Rhoads,* 45 Pa. St. (5 Watts), 343.

In *Phillips v. Houston,* 50 N. C., 302, it is held that the delivery of a deed to a third person, signed and sealed to be proved and registered, without retaining any authority or control over it, was a complete delivery. This case cites *Hall v. Harris,* 40 N. C., 303, which holds that there is a delivery of a deed when, "signed and sealed, it is put out of the possession of the maker." In the present case the uncontradicted testimony of the plaintiff's witness is that the deed was not only signed and sealed, but was duly probated; and when it was put in the mail it was beyond the control of the grantor and was a delivery. *Phillips v.*

*Houston, supra,* cites many cases to the same effect and is itself cited in many other cases. See Anno. Ed. Among these cases is *Robbins v. Rascoe,* 120 N. C., 80, where the Court held that when "the maker of a deed delivers the same to some third party for the grantee, without retaining any control over it, the delivery is complete and the title passes at once, although the grantee may be ignorant of the fact, and no subsequent act of the grantor can defeat the effect of such delivery." That case cites many others, as *Threadgill v. Jennings,* 14 N. C., 384, "A deed is good if delivered to a stranger to the use of the obligee," and *Tate v. Tate,* 21 N. C., 26, where the deed was delivered to the uncle of the parties for the benefit of his infant children, and after his death the grantor obtained possession of it before its registration and canceled it, the Court held that the title was in the children. There is also cited in *Robbins v. Rascoe, supra, Kirk v. Turner,* 16 N. C., 14, where the Court held that the deed being "delivered to a third party to be carried to the grantee, the acceptance is presumed until the contrary is shown." And in the present case the grantee, when told of the execution and deposit of the deed in the postoffice, did not repudiate it nor deny the fact. In *Morrow v. Alexander,* 24 N. C., 388, a father living in South Carolina delivered the deed for his daughter to his son, to be delivered to his daughter, and the Court held that the execution was complete and the title passed. In *McLean v. Nelson,* 46 N. C., 396, also cited in *Robbins v. Rascoe, supra,* the Court held: "When one delivers a deed to a third person, in the absence of the grantee, the latter is presumed to accept it, so that it forthwith becomes a deed, and the legal effect is to pass the property."

The above case, *Phillips v. Houston,* that the delivery of a deed to some third party for the grantee, without the grantor retaining any control over it, is a "delivery complete, and the title passes at once, although the grantee may be ignorant of the facts," is cited and approved by *Brown, J.,* in *Fortune v. Hunt,* 149 N. C., 360, and *Walker, J.,* in *Buchanan v. Clark,* 164 N. C., 62. In the present case the absolute delivery of the deed, duly probated, by placing it in the postoffice, postage paid, directed to the grantee, is proven by the testimony of the plaintiff's witness, who testifies, also, that he told the grantee that this had been done, and the grantee testifies that he was so informed, and offers no testimony to deny it or that he declined to accept the title. It follows that the legal title thus passed in pursuance of the previous parol agreement (if it existed) put an end to the trust, and this legal title was not destroyed by the loss of the deed any more than in the above cases where the grantor, subsequently obtaining possession of the deed, destroyed it before registration. It was the grantee's own fault (the plaintiff in this action) that he did not apply to Johnson to execute the deed, nor institute proceedings under Revisal, 336, to compel reëxecution of the lost

deed and to register the same. He could have filed *lis pendens,* if necessary, to protect his rights during such proceedings.

The plaintiff, not having caused the deed to be reëxecuted and registered, is in no better position than if he had lost the deed or destroyed it before registration. The legal title was passed to him by the execution of the deed, and upon discovering its loss he. could have had a reexecution or a duplicate registered.

But even if the delivery of the deed to a third party for him was not shown by the testimony of his own witness and by his failure to negative such delivery, or, when told of the fact, to repudiate the transaction, was not sufficient, there are other reasons why the plaintiff cannot recover. Equity will not enforce a stale claim. On the evidence here of the plaintiff, it was more than nineteen years after the alleged oral agreement was made to convey a half interest in this land to him before he took any steps to assert his rights. It was fifteen years after the deed was deposited in the postoffice, duly executed and directed to him, before he moved in the matter; the grantor went into bankruptcy in 1911, and for three years he took no steps to notify the trustee in bankruptcy that he had any claim, though the land was fully described in the advertisement thereof; and he did not object to the confirmation of the sale. It is true, he testified that at the sale, in an ordinary tone of voice, he stated to the crier (not to the trustee or the purchaser) that he claimed an interest in this land. The trustee in bankruptcy and Mr. Hardy, president of the National Bank of Norfolk, who was president of the Juniper Corporation and bought the land for said company, both testified that they did not see Lynch at the sale, and had no notice at that time or any other before this action was brought that the plaintiff asserted any interest in the land. The land when conveyed to Johnson brought $550, of which the plaintiff claimed that he paid $275 to Johnson for a half interest. It is now worth $4,000. In *Hamlin v. Mebane,* 54 N. C., 18, it was held that equity would hold less than twenty years an abandonment. See citations in Anno. Ed.

Moreover, since the adoption of the Constitution the Revisal, 399, after providing limitations for legal proceedings, enacts as follows as to equitable proceedings: "An action for relief not herein provided for must be commenced within ten years after the cause of action shall have accrued." It was held: "This section covers all causes, equitable and legal, not otherwise provided for." *McAden v. Palmer,* 140 N. C., 258.

"An action to have a trust declared and a conveyance would be barred by ten years." *Norcum v. Savage,* 140 N. C., 472. In *Phillips v. Lumber Co.,* 151 N. C., 521, it is held: "An action to have a party declared a trustee is barred by ten years. *Johnston v. Lumber Co.,* 144 N. C., 717; *Norcum v. Savage,* 140 N. C., 472; *McAden v. Palmer, ib.,* 258; *Ritchie v. Fowler,* 132 N. C., 788; *Norton v. McDevit,* 122 N. C., 759."

The evident object of this section, Revisal, 399, was to substitute for the provision as to stale claims obtaining in equity the definite period of ten years. Even if the ten years should not be counted, from the time when the alleged oral agreement was made in 1895, it certainly ran from the time that the executed deed in pursuance of the oral agreement was placed in the postoffice in 1899 or 1900, of which he was notified, according to testimony both of Johnson and Lynch himself. It was, however, some fifteen years after that date before he brought this action to set up the alleged oral agreement, which he had notice had been terminated by the delivery of the deed to the postoffice for him.

Independent of the above grounds, either one of which is fatal to the plaintiff's claim, Revisal, 980 (the Connor Act), which was passed to prevent frauds and perjuries and to insure purchasers protection against secret and latent liens and claims under unregistered deeds and conditional sales, provides: "No conveyance of land, or *contract to convey,* or lease of land for more than three years shall be valid to pass any property, as against creditors or purchasers for a valuable consideration, from the donor, bargainor, or lessor, but from the registration thereof, within the county where the land lies." It is unnecessary to cite the numerous cases sustaining this act, and holding that no notice, "however full and complete," can avail when such conveyance or contract or lease is not registered.

The plaintiff claims under a *contract* to convey. If that contract was in writing it would be utterly valueless, no matter how full the notice of its existence, unless it was duly registered, as against a creditor or purchaser for a valuable consideration. Under the act of Congress amendatory to the Bankrupt Law, 25 June, 1910, the trustee in bankruptcy represents the creditors and is a purchaser for value. If, therefore, the contract was in writing, being unregistered, it could not avail against creditors, or the trustee in bankruptcy, who represents them. The plaintiff certainly cannot occupy any better position by reason of the fact that his contract was not in writing and, therefore, could not be registered. It was his duty to have had the contract placed in writing and recorded. He has delayed to do so for nineteen years, and this laches is inexcusable. He failed for more than fifteen years to have the deed reëxecuted after its delivery in the postoffice in 1899 or 1900, and is certainly barred by Revisal, 399. He is also barred by the fact that, the title having been passed to him by the execution of the deed, he did not have it reëxecuted and recorded.

It would be indeed a strange anomaly if Revisal, 980, which requires "contracts to convey" to be registered in order to prevent frauds and perjuries and to give purchasers security against oral evidence of unrecorded or secret and latent liens, should not require oral contracts to be put in writing and registered, but should exempt them from such

registration on the ground that, being oral, they could not be registered.

We will not be understood as applying this to oral trusts arising *ex maleficio* by fraud or duress. That proposition is not presented in this case for consideration, and we make no intimation in regard to such cases. We are holding that under the language and spirit of the Connor Act it applies to *contracts* to convey, whether oral or written.

The act amendatory to the Bankrupt Act, 25 June, 1910, places a trustee in bankruptcy not only in the position and with rights of creditors, but endows him "with all the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings," which includes, of course, the position of a judgment creditor. This statute was enacted to correct the decision of the United States Supreme Court in the *Cassell case*, 201 U. S., 304. It has been repeatedly so held in the cases cited in the former decision of this case, 170 N. C., 110, and in the opinion filed the same day, in *Hinton v. Williams*, 170 N. C., 115, and has been more recently sustained in *Fairbanks Steam Shovel Co. v. Wills*, 10 April, 1916, in which it is held (36 Supreme Court Reporter, 466) that the mortgagee in a chattel mortgage unregistered cannot perfect his title as against the bankrupt by taking possession of the property, if the mortgage was not recorded at the date of filing the petition. It is also held in *Bailey v. Ice Cream Co.*, 36 Supreme Court Reporter, 50, that the rights of the trustee in bankruptcy are those of a creditor having a lien by judgment or equitable proceedings on the date of filing the petition. Here the petition was filed in 1911, and the plaintiff did not bring his action till three years later, after the property was duly advertised, sold, sale confirmed, and deed executed.

Petition dismissed.

HOKE, J., concurs in result.

WALKER, J., concurring: As the debts of C. R. Johnson, the bankrupt, were evidently contracted since the creation of the alleged trust, the trustee in bankruptcy, under the amendment of 1910, stood in the position of a creditor and was vested, by the amendment, with all "the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings thereon" as to all property in the custody of the bankruptcy court. A creditor, holding such a lien, founded upon a debt contracted since the creation of the resulting or parol trust, and with a record which disclosed that Johnson was the absolute owner of the property, would hold his lien on the land discharged of the trust, as he would be in the analogous position of a purchaser for a new consideration of value, who had bought the land without notice of the trust, as both creditors and purchasers are protected in the same

way and for the same reason. They are both innocent holders, who are favored by the law. Even a creditor or purchaser whose right is based upon an antecedent debt or consideration is considered as holding his right for value, under the 13th Elizabeth, as against other creditors, though not under the 27th Elizabeth as against a prior donee; but if the consideration is parted with upon the faith of an absolute title in the debtor, as appears by the record, the creditor with a lien in law upon the land should fairly come within the principle which protects purchasers and creditors against prior equities. *McKay v. Gilliam,* 65 N. C., 130. It is said by Mr. Black in his recent work on Bankruptcy (1914), sec. 316, that the amendment of 1910 gives the trustee a superior position to the one held by him before that change in the law. And Mr. Collier, in his book on Bankruptcy (9th Ed. of 1912), p. 1000, says that "The amendment of 1910 has extended the title of the trustee, so that he has now more than the limited title of the bankrupt," and this must needs be so, for otherwise the amendment would have little or no force or effect. Black also says, in the section above cited, that the old decisions have but slight application since the change in the law. There is no pretense here that creditors of Johnson, whose position the trustee now occupies, had any notice of the trust at the time their claims were contracted or since. If the purchasers at the bankrupt's sale bought with notice, they would yet get a good and valid title as against plaintiff Lynch, if the creditors of Johnson had no notice and the trustee is to be regarded as one holding the rights of a creditor with a judgment lien. Suppose a creditor had sued and obtained judgment before the bankruptcy, his lien on the land would be preserved; and if his judgment was based on a debt antedating the bankruptcy, it would seem that his right would prevail over that of the plaintiff holding a mere equity; and by the amendment the trustee holds, for the creditors, just as if they had judgment liens at the time of the adjudication of bankruptcy. It further appears to me, on the other question, as to the delivery of the deed, that the fact of there being a return card on the envelope, instead of weakening the defendant's case, tends greatly to strengthen the presumption that the deed was received, as it did not come back, when in the usual course of the mails it should have done so. It doubles the presumption in strength.

As to the acceptance of the deed, this was not necessary, as plaintiff, on his own showing, had the full beneficial interest and Johnson only the naked legal title. The statute (27 Henry VIII.) having executed the use, it was Johnson's duty to convey the legal estate to Lynch, who already had it, by virtue of the statute, but not the written evidence of it. There are decided cases in which the bankruptcy courts have ordered trustees to make just such conveyances where the

LYNCH v. JOHNSON.

right to the deeds was clear and the equity free from any claim of creditors.

I would also refer to the doctrine of laches as applicable to this case, but in the closing hours of the term, and for lack of time, it will be impossible for me to make any reference to the authorities upon that question.

BROWN, J., concurring: This is a petition to rehear this cause, reported 170 N. C., 110. The object of the action is to convert the defendant, the Juniper Company, into a trustee of one-half the land for plaintiff's benefit and for a division. At the conclusion of plaintiff's evidence and again at the conclusion of all the evidence defendant moved to nonsuit, which motion was overruled, and defendant excepted.

I am of opinion that the motion should have been allowed, and that plaintiff is not entitled to a judgment in any view of the evidence.

C. R. Johnson, introduced as a witness by plaintiff, testified that he purchased the land in 1895 for plaintiff and himself, and that plaintiff paid half the purchase money; that by agreement with plaintiff the title to the entire tract was made to Johnson, who agreed to hold it in trust for plaintiff and himself in equal interest. Witness further testifies:

"Shortly after I purchased this land in 1895, and within four or five years thereafter, I made, executed, and acknowledged a deed conveying a half interest in the same to the plaintiff Lynch. I placed this deed, in a stamped envelope with my return address on it, in the post-office, directing the same to the plaintiff. Mr. Lynch told me afterwards that he did not receive this deed. I was adjudged a bankrupt in the District Court of Virginia in 1911. The property described in this action was sold on 4 May, 1914. I did not tell Mr. Davis or any one else that Mr. Lynch claimed an interest in the same. After the sale was made, I asserted a right of dower in the entire tract on behalf of my wife, and I executed with her a deed to the Juniper Corporation, releasing her right of dower in the same. The deed which I mailed to Lynch bore my return address. The deed was never returned to me. I have not seen the same since I mailed it."

Johnson was adjudged a bankrupt, and on 4 May, 1914, his trustee duly sold and conveyed the entire tract to defendant, the Juniper Company. The jury have found that Johnson held the land in trust for plaintiff and himself and that plaintiff gave notice at the sale, and that said defendant thus had actual notice of plaintiff's alleged equity.

Plaintiff testified: "Johnson told me some time ago that he had executed a deed to me for a half interest in this land; that the same had been mailed to me. I never received this deed."

This evidence was all introduced by plaintiff, and there is nothing tending to contradict or qualify it. I am of opinion that the nonsuit should have been allowed because, according to the uncontradicted evidence offered by plaintiff, he has no equitable title to half the land resting in Johnson or the Juniper Company, as both legal and equitable title had been conveyed to plaintiff by Johnson by deed duly executed and delivered long before this action was brought or the Juniper Company acquired any title. There is no finding by the jury upon this phase of the evidence, but I think defendant can get the benefit of it under the motion to nonsuit, because the burden of proof is on plaintiff to show that at the commencement of his action the Juniper Company held the *legal title* to half the land in trust for the plaintiff. That it did not hold it is proven by plaintiff's own evidence. The legal and equitable title to half the land passed out of Johnson and vested in plaintiff by the deed which his own witness, Johnson, testified he executed and mailed to him. That same witness who proved the plaintiff's equitable title to the land also proved that such equity had passed along with the legal title by deed to plaintiff. Consequently there is no trust estate in the Juniper Company for the decree of the Court to operate upon.

In order to constitute a delivery of the deed, it is not necessary that plaintiff should have received it. When Johnson deposited the deed in the postoffice he parted with all control over it and could not recall it. The title thereby became vested in plaintiff, although he may not have received it. This Court has held that "when the maker of a deed delivers it to some third person for the grantee, parting with the possession of it, without any condition or any direction as to how he shall hold it for him, and without in some way reserving the right to repossess it, the delivery is complete and the title passes *at once,* although the grantee may be ignorant of the facts, and no subsequent act of the grantor or any one else can defeat the effect of such delivery." *Fortune v. Hunt,* 149 N. C., 358.

This case cites many authorities and is itself cited with approval by *Justice Walker* in *Buchanan v. Clark,* 164 N. C., 63, and by *Justice Allen* in *Huddleston v. Hardy,* 164 N. C., 213. *Chief Justice Henderson* defines the delivery of a deed to be "a parting with the possession of it by the grantor in such a manner as to deprive him of a right to recall it," and further says: "A delivery of a deed is in fact its tradition from the maker to the person to whom it is made, or to some person for his use, for his acceptance is presumed until the contrary is shown. It being for his interest, the presumption is, not that *he will accept it,* but that he *does.*" *Kirk v. Turner,* 16 N. C., 14. "When the deed is beneficial to the grantee, the acceptance of the grant is presumed." *Arnegaard v. Arnegaard,* 75 N. W., 797.

In considering whether the consent of a grantee to accept and receive the deed is necessary it must be borne in mind that it is not the ordinary purchase and sale of land in which the grantee must be consulted; such is not the case. This is a case where the trustee of an express trust, who admits that he holds the land of a grantee, is endeavoring to get rid of his trust and convey the legal title to the person who in equity owns the land. As this was a pure unmixed trust, in my opinion, the trustee had a right to rid himself of the legal title by executing a deed to the *cestui que trust,* whether the latter consented or not. It is not necessary to show acceptance upon the part of this particular grantee, because he was the *cestui que trust* and already owned the land.

It is well settled that it is not essential to the immediate operation of a deed that it be placed directly in the hand of the grantee. It is essential, as well as indispensable to its effect, that the grantor should part with it and all control over it by putting it into a course of transmission or delivery. *McKinney v. Rhoads,* 45 Pa. (Watts), 343.

In that case it is held, in an opinion by so great a judge as *John Bannister Gibson,* that "the deposit of a deed in the postoffice directed to the grantee is equally availing for that purpose as a delivery of it to a messenger." In the opinion he further says: "The assent of the assignee (grantee) may be anticipated as it was in *Smith v. The Bank of Washington,* 5 Serg. and Rawle, 318."

In *McLean v. Nelson,* 46 N. C., 397, it is held that "Where a deed is delivered to a third person in the absence of the grantee, the latter is presumed to accept it, and it *forthwith* becomes effectual to pass the property included in it." To same effect is *Merrills v. Swift,* 18 Conn., 257.

It is contended that the deposit in the postoffice raises only a presumption that the deed reached the addressee (grantee), and that such a presumption may be rebutted. The case of *Sherrod v. Ins. Assn.,* 139 N. C., 169, is relied on to sustain this position. In my opinion, that case has no application here. I admit that where a letter is duly mailed a presumption arises that the addressee received it, and that the addressee may rebut such presumption by showing that in fact he did not receive it. In that case it was necessary that the addressee should have received the letter. In this case there is no presumption of delivery to the addressee to rebut. It is not necessary that the grantee should have received the deed. Its delivery was complete when the grantor, Johnson, parted with all control over it by mailing it to the plaintiff, the grantee. When Johnson deposited it in the postoffice, stamped and addressed to the plaintiff, it had the same force and effect as if he had sent it by a special messenger. If the messenger lost it, the delivery to the grantee was nevertheless complete.

But it is contended that there is no finding of fact that Johnson did mail the deed to plaintiff. It is not necessary that there should be. That fact was proven by plaintiff's witness and was in evidence when the motion to nonsuit was made at close of plaintiff's evidence as well as when the motion was renewed.

When Johnson, plaintiff's witness, testified that he held the legal estate subject to plaintiff's equity, he at the same time testified that he had parted with both legal and equitable estate by mailing the deed to plaintiff. The latter cannot take the benefit of one-half of Johnson's statement and discard the other half.

I am of opinion that at commencement of this action plaintiff was holding his interest in the land not by virtue of a resulting trust or other equity by virtue of the deed Johnson had made him. It was his duty, when he was informed of the fact that Johnson had mailed him a deed, to procure another from Johnson and put it on record, or commence proceedings to establish his lost deed, which from their inception would operate as a *lis pendens*. Having failed to do either, I am of opinion that no verbal notice, however full, prevented the purchaser from acquiring the land discharged of the alleged equity. With entire deference for the opinion of others, to hold otherwise upon the facts of this case, as testified to by plaintiff and his witnesses, would, in my opinion, practically nullify the registration laws of this State. I think the petition to rehear is properly dismissed.

ALLEN, J., dissenting: The opinion of the Court rests upon the single position that the plaintiff is "claiming under an unrecorded deed," and as I do not think this statement finds any support in the record, I cannot agree to the judgment.

Neither the plaintiff nor the defendant alleges in the pleadings that the plaintiff ever had a deed for any part of the land, registered or unregistered, nor is there any finding by judge or jury to that effect, and, on the contrary, the plaintiff alleges and seeks to enforce a parol trust, and this was the question tried in the Superior Court.

The only part of the record which gives color to the statement in the opinion is that Johnson, who was a witness for the plaintiff, testified on cross-examination by the defendant that he signed, sealed, and probated a deed conveying one-half of the land to the plaintiff, and inclosed this deed in a return envelope, duly stamped, addressed to the plaintiff, and that he deposited this letter in the postoffice; and the plaintiff testified that he never received the letter or the deed.

Has, then, the plaintiff, on this evidence, ever held an unrecorded deed, and can this Court so declare?

He has not unless a deed was delivered to him, because "A delivery is essential to the validity of a deed. It is the final act which con-

summates the deed, is as necessary as the seal or signature of the grantor, and without it all other formalities are ineffectual and the deed is void *ab initio,* being at most a mere proposition to convey, which may be withdrawn at any time before acceptance by the other party. Delivery has been called the life of a deed. Certainly no title passes in its absence, even though the intent to deliver is clear and the failure to deliver due to accident." . 8 Ruling Case Law, 973.

Has there been a delivery of a deed to the plaintiff? And note here the difference between delivery, ascertained as a fact, and evidence of delivery; and herein, I think, consists the error of the Court, in assuming as a fact that there has been a delivery, when there is only evidence of delivery, and when this was rebutted by the evidence of the plaintiff that he never received the deed.

The first objection to ordering a nonsuit upon the ground that the deed was delivered to the plaintiff is that the jury, and the jury alone, have the right to pass on the credibility of the witness Johnson when he testified that he *mailed the letter.* This Court has no such power, and no one will claim on this record that the plaintiff ever had an unrecorded deed unless Johnson mailed the letter.

Neither the judge nor the jury in the Superior Court has passed on the question, and I respectfully submit this Court cannot.

It is true that a party cannot impeach his own witness, but "it is always open to a litigant to show that the facts are otherwise than as testified to by his witness" (*Smith v. R. R.,* 147 N. C., 608), and when new matter is brought out on cross-examination, not touched on in the examination in chief, the witness becomes as to that matter the witness of the party cross-examining him. 40 Cyc., 2562.

If, however, we assume that the letter, inclosing the deed, was mailed, does this establish a delivery to the plaintiff? And here we must bear in mind that there is no evidence that the plaintiff requested the defendant to send a deed by mail, and that the defendant selected the agency for sending the deed.

Clearly the evidence of Johnson could do no more than raise a presumption of delivery, and the evidence of the plaintiff that he never received the deed, if believed, rebutted the presumption.

"When a letter is properly addressed and mailed, with postage prepaid, there is a rebuttable presumption of fact that it was received by the addressee as soon as it would be transmitted to him in the usual course of the mails. In some States the presumption is recognized by express provision of statute. The rule is founded upon the presumption that officers and employees of the Postoffice Department will do their duty, and the regularity and certainty with which, according to common experience, the mail is carried. The real reason is the second. . . . The presumption of due receipt of a letter may be rebutted

by evidence that it was not in fact received, or not received in the ordinary course of the mails." 16 Cyc., 1070.

The same rule is stated in *Bragaw v. Supreme Lodge,* 124 N. C., 160, as follows: "When a letter is duly mailed, it is presumed that it reaches its destination and is received by the party to whom it is addressed. This is a presumption of fact, and may be rebutted by evidence, to be considered by the jury.. This presumption is an inference of fact, founded on the probability that the Government officials will do their duty, and the usual course of business," approved in *Bennett v. Tel. Co.,* 168 N. C., 498.

Mr. Chamberlayne says, in his work on Modern Evidence, vol. 2, sec. 1057: "Within. the more settled portions of the civilized world the regularity of the mail service is a matter established by experience. It will, therefore, be inferred that in a particular instance of transportation by mail the same regularity of transmission was applied. When certain necessary conditions are complied with, the mailing of a letter or other postal matter gives rise to an inference that it arrived at its destination in due course of mail. The presumption or inference is one of fact. In other words, the fact of mailing, under certain conditions, is relevant to or probative of the fact of receipt of the addressee of the letter"; and in sec. 1062: "Evidence rebutting the inference of receipt from mailing may be of several kinds. The person to whom the mail matter is addressed may testify that he did not, in point of fact, receive it at all, or if he did receive it, that it was delivered to him later than it should have been."

In the note to the last section he cites, in support of the text, many authorities, and among them, *Sherrod v. Ins. Assn.,* 139 N. C., 167. In the *Sherrod* case the question involved was as to giving notice of an assessment, and the defendant introduced evidence tending to prove that the notice was duly mailed, and the plaintiff testified that he never received the notice.

The court instructed the jury that proof of the mailing of the notice, "properly addressed and postpaid, raised a presumption that the notice was received by the plaintiff; but this is only a presumption of fact, and could be rebutted, and that it was for the jury to find whether such notice was in fact properly addressed and mailed; if so, then the presumption was that plaintiff received it; and unless he rebuts this presumption by showing that he did not receive the notice, the plaintiff could not recover"; and this Court said: "The instructions of the court to which the defendant excepts are correct and are fully sustained by the authorities. If the insurer sends the notice by mail properly addressed and stamped, the law presumes the addressee received it. The presumption may be rebutted, as appears to have been done in this case. *Rosenthal v. Walker,* 111 U. S., 185; Lawson on

Presumptive Ev., 69; Am. and Eng. Enc. (1 Ed.), pp. 80-81, and cases cited."

This case recognizes the principle that the evidence of the addressee that he has not received the letter, if believed, rebuts the presumption.

The question was again considered in *Mill Co. v. Webb,* 164 N. C., 89, involving the delivery of a draft and bill of lading transmitted by mail, and *Walker, J.,* then speaking for the Court, says: "The City National Bank, it appears, mailed the letter with the draft and bill of lading to the defendant bank. This was evidence of its receipt by the latter, and raised a rebuttable presumption of the fact to be submitted to the jury, along with any evidence in the case tending to show that it was or was not in fact received. This is said to be founded upon another presumption, that officers of the Postoffice Department will do their duty, or upon the better reason, the regularity and certainty with which, according to common experience, the mail is carried. It is, at least, evidence from which the jury may reasonably infer the fact that the mail matter was received in due course of transmission and delivery. . . . It is not conclusive. The contrary may be shown or may be inferred from all the testimony, but it is some evidence of the fact. 'The burden of proving its receipt remains throughout upon the party who asserts it.' *Huntley v. Whittier, supra.*"

The sending of a deed by mail, when there has been no previous request, is in the nature of an offer, which is not binding as an offer until receipt, and does not become a contract until accepted. It is otherwise as to the letter accepting the offer, which makes the contract complete from the time of mailing.

The author draws the distinction in 9 Cyc., 294-5, where he says: "Where a person uses the post to make an offer, the postoffice becomes his agent to carry the offer. The offer is not made when the letter is posted, but when it is received, and the offerer must suffer the consequence arising from delay or mistake on the part of the postoffice. . . . Where a person makes an offer and requires or authorizes the offeree, either expressly or impliedly, to send his answer by post or telegraph, and the answer is duly posted or telegraphed, the acceptance is communicated and the contract is complete from the moment the letter is mailed or the telegram sent."

It is also evident that the defendant did not think that the delivery of the deed to the plaintiff was established upon the record, as otherwise he would not have asked his Honor to submit the issue to the jury which he tendered: "Did C. R. Johnson, after the purchase of said land and prior to May, 1914, execute and deliver to the plaintiff a deed for one-half interest in said land?"

40—171

Suppose this issue had been submitted to the jury, what would have been the charge of his Honor?

He would, in the first place, have told the jury that if they did not believe the evidence of Johnson that he mailed the deed, they would answer the issue "No"; but if they did believe this evidence, and found from the evidence that the deed was mailed, that this would raise a presumption that it was received by the plaintiff, and that upon this presumption, if not rebutted, they would answer the issue "Yes."

And he would have further charged the jury that if they believed the evidence of the plaintiff that he did not receive the deed, this would rebut the presumption, and if they so found they would answer the issue "No."

Cases like *Fortune v. Hunt,* 149 N. C., 359—and there are many in our Reports announcing the same doctrine—that there is a delivery when the grantor parts with the possession and control of the deed, do not, in my opinion, have any bearing on the question, because in all of them the grantee was claiming under the deed, and the only fact in controversy was whether the grantor had parted with the control of the deed.

They do not present the question of delivery, where the grantee has neither received the deed nor claimed under it, which is now before us, nor do they controvert the proposition that acceptance by the grantee is necessary to complete the delivery and transfer of the title.

"An estate cannot be thrust upon a person against his will" (8 Rul. Case L., 975), or, as said by *Justice Ventris* in *Thompson v. Leach,* 2 Vent., 198, a man "cannot have an estate put into him in spite of his teeth."

In the note to *Emmons v. Harding,* 1 A. and E. Anno. Cases, 868, decisions from the Supreme Court of the United States and from the highest courts of twenty-two States and of England are cited in support of the principle that "In order to effect a valid transfer of the title there must be an acceptance of the conveyance by the grantee."

When the deed is beneficial to the grantee and he claims under it, there is a presumption of acceptance, but "there is no actual acceptance of the title until the grantee has elected to claim under the deed." 8 Rul. Case L., 1001.

Perhaps the best statement that can be found of the rule that acceptance by the grantee is essential to pass the title, and that it will not be presumed unless the grantee has received the deed and is claiming under it, is in *Hibberd v. Smith,* 56 A. R., 735, in which the principles to be deduced from the decided cases are summed up as follows:

"1. In every deed there must necessarily be a grantor, a grantee, and a thing granted (4 Crews, 12); that delivery by the grantor and acceptance by the grantee are essential to the validity of a deed; that

a deed takes effect only from its delivery, and there can be no delivery without acceptance, either expressed or implied, delivery and acceptance being necessarily simultaneous and correlative acts. *Richard v. Jackson,* 6 Cow., 617; *Church v. Gillam,* 15 Wend., 658; *s. c.,* 30 Am. Dec., 82. Other authorities cited *post.*

"2. Delivery may be made, first, to the party himself, or any other by his appointment, or to any one authorized to receive it; or, second, to a stranger for and in behalf and to the use of him to whom it is made without authority, under certain circumstances. 2 Roll., 24 L., 48; Touchstone, 75. See *post.*

"3. In cases of delivery to a stranger, without authority from the grantee to accept, the acceptance of the grantee at the time of delivery will be presumed, under the following concurring circumstances, viz.: (1) that the deed be upon its face beneficial to the grantee; (2) that the grantor part entirely with all control over the deed; (3) that the grantor (except in case of an escrow) accompany delivery by a declaration, intention, or intimation that the deed is delivered for and in behalf and to the use of the grantee; (4) that the grantee has eventually accepted the deed and claimed under it. 4 Crews, 34; Touchstone, 57, and other authorities *post;* 4 Gilm., 175, 176."

It would seem to follow that this Court cannot declare as matter of law the deed from Johnson to the plaintiff was delivered, when the plaintiff swears he never received it, and when he has not claimed under it.

But let us assume there is nothing in this position; that acceptance by the grantee is not essential, and that the controlling fact to make good a delivery is that the grantor shall have parted with the possession and control of the deed: still a delivery cannot be declared by this Court as a legal conclusion, because there is evidence that the grantor only parted with the possession of the deed temporarily, and that he retained control of it, as Johnson, the grantor, testified that he mailed the deed in a return envelope.

In other words, Johnson selected his agent, and said to him, "If you see Lynch, give him this deed, and if not, bring it back to me," and this would at least raise a question for the jury as to the intent of the grantor at the time the letter was mailed.

If these positions are not sound and the opinion of the Court states the law correctly, it to my mind introduces new and startling propositions.

It says, after quoting the evidence of Johnson that he mailed the deed: "This was a delivery to the addressee and completed the execution of the instrument," and it was necessary to say this in order to sustain the position that the plaintiff had an unrecorded deed. This proposition involves, first, the power of this Court to pass on the ques-

tion of the credibility of Johnson and to find as a fact that he mailed the deed, in the face of the evidence of the plaintiff that he did not receive it; second, that this Court may order a nonsuit upon the statement of a fact, adverse to the plaintiff, on the cross-examination of one of his witnesses; third, that mailing a letter inclosing a deed, without previous request and without the knowledge of the grantee, is a delivery of the deed to the grantee; and, fourth, that a deed may be delivered without acceptance by the grantee.

The last two will be of peculiar interest to those who have lands for sale, as hereafter, instead of hunting a purchaser, they may select one able to pay, and sign probate and *mail* a deed to him, and draw for the purchase money.

I therefore think the appeal cannot be dealt with upon the assumption that the plaintiff is "claiming under an unrecorded deed," and that the real question involved is the right of the plaintiff to establish and enforce a parol trust against the defendant, a purchaser of the land in controversy, who bought with notice of the equity, at a sale by a trustee in bankruptcy.

The jury returned the following verdict:

1. Did the defendant C. R. Johnson, at the time of the execution of the deed from W. E. Shallington and wife to said C. R. Johnson, dated 1 August, 1895, recorded in book 41, page 498, of the register of deeds of Tyrrell County, agree with the plaintiff to take said land and hold the same in trust for the plaintiff and himself, as alleged in the complaint? Answer: "Yes."

2. Did the plaintiff pay one-half the purchase price for said land, as alleged? Answer: "Yes."

3. Did the Juniper Corporation have actual notice of the claim to said land at the time the same was sold by Davis, trustee in bankruptcy of C. R. Johnson? Answer: "Yes."

4. What was the value of said land on the day the same was bid off by the said Juniper Corporation? Answer: "$4,000."

5. What amount did said Juniper Corporation pay for said land at said sale? Answer: "$1,000."

6. Is the plaintiff the equitable owner of an undivided one-half interest in and to the 500-acre tract described in the complaint? Answer: "Yes."

This verdict established the following facts: That the plaintiff and the bankrupt, Johnson, bought the land in controversy, each paying one-half of the purchase price; that the land was conveyed to Johnson, he agreeing at the time that he would hold the title in trust for himself and the plaintiff; that thereafter Johnson became a bankrupt and the land was sold by the trustee in bankruptcy and bought by the defendant; that at the time of the purchase the defendant had notice of the

equity of the plaintiff, and that it paid only $1,000 for land that was worth $4,000.

This, according to all the decisions in this State, creates a trust in favor of the plaintiff against Johnson (*Anderson v. Harrington,* 163 N. C., 142), and prior to the amendment of the Bankruptcy Act of 1910 and independent of the Connor Act, it is clear from all the authorities that the plaintiff could have the defendant, who purchased from the trustee of Johnson, declared a trustee for him and could compel a conveyance of one-half interest in the land. *Thompson v. Fairbanks,* 196 U. S., 516; *New York Mfg. Co. v. Cassell,* 201 U. S., 344; *Hinton v. Williams,* 170 N. C., 115.

The Supreme Court of the United States said in the *Fairbanks case,* "Under the present Bankrupt Act the trustee takes the property of the bankrupt, in cases unaffected by fraud, in the same plight and condition that the bankrupt himself held it, and subject to all the equities impressed upon it in the hands of the bankrupt, except in cases where there has been a conveyance or an encumbrance of the property which is void as against the trustee by some positive provision of the act"; and in the *Cassell case,* "The trustee stands simply in the shoes of the bankrupt, and, as between them, he has no greater right than the bankrupt." This is held in *Hewit v. Berlin Mach. Works,* 194 U. S., 296. The same view was taken in *Thompson v. Fairbanks,* 196 U. S., 516.

It was there stated, under the present Bankrupt Act the trustees take the property of the bankrupt, in cases unaffected by fraud, in the same plight and condition that the bankrupt himself held it, and subject to all the equities impressed upon it in the hands of the bankrupt. See *Yeatman v. New Orleans Sav. Inst.,* 95 U. S., 764; *Stewart v. Platt,* 101 U. S., 731; *Hauselt v. Harrison,* 105 U. S., 401. The same doctrine was reaffirmed in *Humphrey v. Tatman,* 198 U. S., 91; and in the *Hinton case* the language from the *Cassell case* was quoted and approved.

The decision of the question, therefore, depends upon whether the amendment to the Bankruptcy Act of 1910 changes the rule that the trustee in bankruptcy takes the title of the bankrupt subject to prior equities, and whether the Connor Act has the effect of destroying equities as against purchasers, who take with notice of the equity.

I will first consider the amendment of 1910, which provides: "And such trustees as to all property in the custody or coming into the custody of the Bankruptcy Court shall be deemed vested with all the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings thereon; and also, as to all property not in the custody of the Bankruptcy Court, shall be deemed vested with all the rights, remedies, and powers of a judgment creditor holding an execution duly returned unsatisfied," ch. 412, par. 8, 36 Stat. at L., 840;

U. S. Com. St. 1913, par. 9631, which was declared in *Bernard v. Carr,* 167 N. C., 482, to vest in the trustee "all the rights of a judgment creditor upon whose judgment execution has been issued and returned unsatisfied."

What, then, are the rights of a judgment creditor? It is well settled in this State that he may issue his execution and sell the property of the debtor, but that the purchaser takes subject to equities. *Freeman v. Hill,* 21 N. C., 389; *Dudley v. Cole,* 21 N. C., 435; *Williams v. Lewis,* 158 N. C., 576.

In the first of these cases the Court said: "A sale under a *fieri facias* is a prescribed mode in which the law carries into effect its seizure of property of a debtor, for the satisfaction of the demand of his creditors. The mandate gives no authority to the officer to seize any other estate than the estate of the debtor; and the vendee under execution acquired no other estate than the law directed to be seized for this purpose. The vendee represents the judgment creditor, but is not regarded a purchaser from the proprietor. The well-known doctrine of equity, which refuses to enforce a trust against a purchaser for valuable consideration and without notice, applies only in cases of sales *between parties,* not to vendees under execution," and in the last, quoting from *Ruffin, C. J.:* "Upon the argument, the counsel for the defendant placed not much stress on the defenses brought forward in the answer; and we think very properly, as they are clearly insufficient. In the first place, the sheriff's sale is no bar, even if a legal title had been the subject of it, as the purchaser only succeeds to the defendant in the execution, and is affected by all the equities against him. *Freeman v. Hill,* 21 N. C., 389. . . . If the purchase be of the legal title, but with notice of an equity in another, or if it be only an assignment of an equity, with or without notice of a prior equity in another person, in either case the estate must, in the hands of the purchaser, answer all the claims to which it must have been subject in the hands of the vendor."

It would seem, therefore, to be clear that as the Act of 1910 only confers the right of a judgment creditor upon the trustee, and as a purchaser at a sale by a judgment creditor takes his title subject to the equities of the defendant, that a purchaser at a sale by a trustee in bankruptcy would also take subject to equities, and that the rule still exists, stated by *Connor, J.,* in *Supply Co. v. Machin,* 150 N. C., 746, "that every person buying at a bankrupt sale, as at one made by the sheriff, must take notice that nothing is proposed to be sold except the interest of the bankrupt or the defendant in the execution," and in *Steadman v. Taylor,* 77 N. C., 134, "That a purchaser at a sale by an assignee in bankruptcy stands on the same footing with the purchaser at execution sale."

This construction of the amendment of 1910 is in accordance with the language of the Bankruptcy Act, which only vests in the trustee the "title of the bankrupt" (sec. 70a), and with its spirit, which is designed to give the creditor all the bankrupt owns and no more.

It is suggested that this makes very little change in the law as it existed prior to 1910, and that the amendment confers no special benefit upon the trustee; but the answer is that it gives to the trustee the lien of a judgment creditor and operates to give him priority over unregistered deeds and mortgages, required by the law of the State to be registered, as is illustrated by the case of *Hinton v. Williams, supra.*

Does the Connor Act have the effect of destroying equities against a purchaser who buys with notice of the equity? The question was discussed, but not decided, in *Wood v. Tinsley,* 138 N. C., 507, which holds that one in possession under a parol contract to buy has no enforcible equity, in which *Connor, J.,* says: "It is true that when one takes with notice of an equity, he takes subject to such equity. To permit him to take free from an equity attaching to the title in the hands of his grantor, with notice thereof, would be to permit him to participate in a fraud and profit thereby."

He who takes with notice of an equity takes subject to the equity (*Derr v. Dellinger,* 75 N. C., 300), and Mr. Pomeroy says, vol. 2, sec. 753, Pom. Eq. Jur.: "The rule is universal and elementary, that if a purchaser in any form receives notice of prior adverse rights in and to the same subject-matter, before he has completely acquired or perfected his own interest under the purchase, his position as *bona fide* purchaser is thereby destroyed, even though he may have paid a valuable consideration."

Has this rule, which gives to the purchaser all he has bought and which prevents him from repudiating an equity of which he has notice, been abrogated by force of the legislative act?

The statute (Revisal, sec. 980) does not refer to equities, and there is no word in it which by any rule of construction can be held to include equities, and it must be kept in mind that we are not dealing with the wisdom of the legislation, but with the meaning of the statute as it is written.

It speaks only of "conveyances," "contracts to convey," and a "lease for more than three years."

It says: "No conveyance of land, or contract to convey, or lease of land for more than three years shall be valid to pass any property, as against creditors or purchasers for a valuable consideration, from the donor, bargainor, or lessor, but from the registration thereof within the county where the land lieth."

The conveyance must be in writing, and by section 976 of the Revisal all contracts to convey and all leases for more than three years are declared to be void unless "put in writing."

It would seem to follow that as conveyances must be in writing and as contracts to convey and leases for more than three years are required by section 976 to be in writing, that when the same words are used in a subsequent section of the Revisal, dealing with the same subject-matter, they should be given the same construction, and that therefore the Connor Act only deals with titles and rights evidenced by writing, which can be put on the registry, and not to equitable rights resting in parol, which cannot be registered.

The language in the statute, "but from the registration thereof," necessarily implies a writing—something that can be registered, and excludes the idea that trusts, which are in parol and cannot be registered, are covered by the statute.

In *Bell v. Couch,* 132 N. C., 346, it was held that wills are not within the operation of the act, and *Connor, J.,* says: "The evil which it was intended to remedy was the uncertainty of titles to real estate caused by persons withholding deeds, contracts, etc., based upon a valuable consideration, from the public records"; and the same judge, in *Skinner v. Terry,* 134 N. C., 309, referring to a decree directing a title to be made in an action for specific performance: "We would not feel authorized to extend the language of chapter 147, Laws of 1885, to include a decree of the character before us in the record."

I submit that there is more reason to enlarge the language of the act to include wills and equitable decrees, which can be placed on record, than to equities in parol.

There are two cases in our Reports which seem to put the matter at rest and to establish the principle that under the law as it stands to-day a purchaser who takes with notice of an equity takes subject to the equity.

The Connor Act is modeled after and is in almost the same language as the act requiring the registration of mortgages and deeds of trust (*Wood v. Tinsley,* 138 N. C., 509), and it was held in *Wittkowsky v. Gidney,* 124 N. C., 441, that an equity to correct a deed could be enforced as against one holding a registered mortgage.

It has also been held in *Sills v. Ford, post,* 733, that this equity for correction may be enforced against a purchaser claiming under a registered deed who bought with notice of the equity.

I cannot see any distinction in principle between these two cases and the one before us.

It is true that in this case it is an effort to enforce a parol trust, while in the two cases cited the relief demanded was the correction of a deed, but in all of them the aid of the Court is invoked to enforce an equity resting in parol and against purchasers with notice.

I have found nothing in our Reports in conflict with this view except the *obiter dicta* in *Quinnerly v. Quinnerly,* 114 N. C., 145, which

has been repeated several times, and last in *Trust Co. v. Sterchie,* 169 N. C., 22, to the effect that "all secret trusts, latent liens, and hidden encumbrances are and were intended to be cut up by the roots by force of our registration laws."

There was no secret trust or latent lien in *Quinnerly v. Quinnerly* or in the subsequent case, the question in the first being the priority of a registered deed to one unregistered, and in the last the priority of the lien of a judgment duly docketed as against the holder of an unregistered deed.

The history of these cases is that the statement in *Quinnerly v. Quinnerly* is taken from *Blevins v. Barker,* 75 N. C., 436, which involved the right of a vendor to a lien for the purchase money, and that in turn rests on the authority of *Womble v. Battle,* 38 N. C., 190, in which the language used is "secret deeds of trust and mortgages," and not "all secret trusts and latent liens."

The right which the plaintiff seeks to enforce is not a stale claim, and his failure to assert it for nineteen years will not affect his right to relief, as the defendant does not plead the statute of limitations or laches, and for the reason that there has been no denial of his right until shortly before suit brought.

This is explained by the evidence of Johnson, who testified: "We were buying lands together. The plaintiff was buying lands in other counties, and it was agreed I should own a half interest in those lands. I went into bankruptcy in 1911. Lynch paid one-half of the purchase money. He made the contract of purchase with W. E. Shallington according to the agreement between him and myself. I have always recognized the right to a one-half of the lands. I have always recognized his right to one-half. When he sold the timber on this land to Fleetwood and Jackson, one-half of the money was paid to Lynch and one-half to me, and the deferred payments were evidenced by notes, one-half of which were paid to Lynch and one-half to me. In my petition in bankruptcy, in the schedule, the property was only listed (one-half of the land, that is) 250 acres. It was put down in the schedule as 250 acres. There are 500 in the whole tract."

I am therefore of opinion that the plaintiff is entitled to enforce the trust found in his favor upon the verdict as it now stands, but I also think the defendant is entitled to a new trial on account of the refusal of his Honor to submit an issue as to the delivery of the deed to the plaintiff by Johnson in execution of the trust.

There is evidence of an actual delivery of the deed, and if the plaintiff received the deed the Connor Act would be operative, as it applies to lost and unregistered deeds. *Hinton v. Moore,* 139 N. C., 44.

If this presents an incongruity in that a parol trust may be enforced against a purchaser with notice, notwithstanding the Connor Act, and

the rights under an unregistered deed cannot be, the remedy is with the General Assembly, which has to this time deemed it wise to restrict the operation of the act to "conveyances," "contracts to convey," and "leases for more than three years." It is enough for us that the law is so written.

If my view should prevail, the defendant would be deprived of nothing it has bought. It would still get all the land listed by the bankrupt, 250 acres, worth $2,000, for $1,000; but if the opinion of the Court stands the defendant will have 500 acres, worth $4,000, for which it paid $1,000, and be freed from an equity of which it had notice.

In my opinion, both the law and justice are with the plaintiff.